## GENERAL TIRE & RUBBER CO. et al. v. TEXAS PACIFIC COAL & OIL CO.

### No. 13484.

Court of Civil Appeals of Texas. Fort Worth.

Jan. 22, 1937.

Rehearing Denied March 12, 1937.

Wm. H. Flippen and John W. Miller, both of Dallas, for appellant General Tire & Rubber Co.

Fay W. Prescott, of Fort Worth, for appellant Logan Tire Co., Inc.

John Hancock, of Fort Worth, for appellee.

BROWN, Justice.

This is an equitable proceeding brought by appellee, Texas Pacific Coal & Oil Company, against General Tire & Rubber Company and Logan Tire Company, Incorporated, appellants.

The suit is for an injunction to restrain appellants from building an addition to, or an extension of, the improvements already erected upon the east end of a lot in the City of Fort Worth, owned by General Tire & Rubber Company and occupied by Logan Tire Company, Incorporated; the appellee being the lessee occupying the west end of the lot, under a written lease.

The facts are: The lot is in the shape of a "flatiron." It is made by three streets. Burnett street, which runs in a northerly and southerly direction, borders the east end of the lot, from West Sixth street to West Seventh street. West Seventh street, which runs in an easterly and westerly direction, borders the south side of the lot from Burnett street to a point on the west where West Sixth street runs into West Seventh street at an angle, in a westerly direction. The north side of the lot is bordered by West Sixth street, which runs in an easterly and westerly direction, from Burnett street to the said intersection of West Sixth street with West Seventh street.

Thus it will be seen that the heel of the flatiron-shaped lot is its east end and the toe of same its west end.

Appellants occupy the east end and appellee the west end of the triangular lot. Appellants have erected a substantial building on the said east end, in which automobile tires and tubes and accessories are sold, and in which a general tire service is conducted.

Appellants, believing that the west end of the lot, because of its advantageous location, would make a desirable location for an oil and gas service station, entered into

negotiations with appellee to lease the same for such purpose. The result was that a written lease was entered into between the respective parties, covering a period of ten years, beginning April 1, 1928.

We find two paragraphs in the lease, the proper construction of which the appellee contends entitled it to restrain appellants from changing the present plan of the improvements by adding an addition thereto extending the walls of the building north for a distance of approximately fifteen feet. These paragraphs are numbers 5 and 6 in the lease, as follows:

"5. Lessee agrees in the construction and erection of signs on said property to co-operate with lessor, and W. H. Logan, so long as he remains a representative of lessor, to the end that lessee's signs may not unreasonably interfere with the display advantages of the location of the property held by lessor adjoining on the east of the property herein leased, and lessor agrees to a like co-operation with lessee in reference to its signs."

"6. Lessor agrees to pave the herein leased property and provide all necessary approaches thereto under the direction of lessee for the proper use of said property as a filling station. The improvements and equipment erected by lessee on said premises are to conform generally with the architectural plans of the improvements erected by lessor on the adjoining property to the east."

Appellee, in seeking the relief desired, pleaded as follows:

"As a part of said lease said defendant, General Tire and Rubber Company, agreed with plaintiff that no signs should be erected on the portion of the property retained by said defendant which would unreasonably interfere with the display advantages of the location of the property for this plaintiff. Said defendant further agreed that the improvements and equipment erected by this plaintiff on said property should conform generally with the architectural plans of the improvements erected by said defendant on its adjoining property, retained by it to the east of the property leased by plaintiff.

"Plaintiff says that the property covered by the lease herein pled is the property on the east intersection of Sixth Street and Seventh Street in the Town of Fort Worth, Tarrant County, Texas, that said property together with the property retained and used by defendants herein constitutes a triangular piece of property, the portion of which said triangle held by plaintiff under lease is the apex thereof.

"Plaintiff further says that acting under said lease and the provisions thereof defendant, General Tire & Rubber Company, and this plaintiff, erected a building extending over from the property of General Tire & Rubber Company not leased by it to plaintiff, onto the portion of the property leased to plaintiff; plaintiff paying for and owning the portion of the building erected on its leased premises.

"Plaintiff alleges that the building so erected with the portion of same on the lease premises held by plaintiff was constructed in compliance with the provisions of paragraph 6 of said lease, providing that the improvements and equipments erected on the lease premises, and the property held by General Tire & Rubber Company on the east of Defendant's premises, should conform generally in architecture.

"Plaintiff says that since the execution of said lease on said premises plaintiff has been engaged in the business of selling gasoline, oils and greases on said lease premises and has expended large sums of money improving said property in excess of the sum of $3000.00; that it has developed on said premises a growing business and daily sells to the public from said premises large quantities of gasolines, oils and greases.

"Plaintiff says that each defendant, General Tire & Rubber Company, acting through its agent, Logan Tire Company, Inc., and the said Logan Tire Company, Inc., acting for itself, contrary to the provisions and stipulations of the lease under which plaintiff holds said premises, and in willful derogation thereof, has begun the erection of an addition to the portion of the building on the premises retained by said defendant, Logan Tire Company, Inc., to the east of the property held by plaintiff under lease, which said addition when and if completed will extend from the principal line of said building to the sidewalk line on Sixth Street on the north of said building.

"Plaintiff says the wall of this addition will completely cut off the view of all traffic passing from the east toward plaintiff's premises on Sixth Street, and will most unreasonably interfere with the display advantages of the location of the property of plaintiff, said addition in itself constituting a sign of defendant's place of business.

"Plaintiff further says that if said defendants are permitted to construct said addition it will throw said building entirely out

of architectural harmony and destroy the conformation of plaintiff's portion of said building to the balance thereof in architectural design, and depreciate the value of plaintiff's portion of said building and premises.

"Plaintiff further says that if said addition is completed it will prevent customers from coming to plaintiff's place of business, as customers coming from the east on Sixth Street will not be able to see plaintiff's place of business until they have passed by the wall of defendant's structure, at which point it will be too late for said customers to turn into plaintiff's place of business.

"Plaintiff says that all and singular said injuries will operate to plaintiff's damage in large sums of money, towit: the sum of Ten Thousand & No/100 ($10,000.00) Dollars, together with other and grievous damages which owing to the circumstances, and in view of the daily change in traffic on Sixth Street, plaintiff is unable to compute, for this that plaintiff cannot tell how many customers will be prevented from coming to plaintiff's place of business by the erection of said wall and addition, and unless defendants are restrained from erecting said addition and wall, defendants will do plaintiff irreparable injury for which there is no adequate remedy at law.

"Wherefore plaintiff prays for a writ of injunction against the said defendants, that the said General Tire & Rubber Company and its agent the Logan Tire Company, Inc., and the employees of both, may be enjoined and restrained from erecting said addition and said wall, and ordered to dismantle and remove all of said wall and addition constructed by said defendants, or any of them, at the time of service of said writ, and that defendants be cited to answer this petition, and that on the final hearing said injunction be made perpetual and that plaintiff have judgment for general relief, and the costs of suit, and so it will ever pray."

Appellants filed appropriate answers to the bill.

After a hearing before the court, without a jury, the restraining order was entered requiring appellants to tear down the portion of the walls then being built on the north side of the lot, and enjoining appellants from building same.

The appeal is from such judgment.

West Seventh street is the principal artery of travel for vehicles going east and west through the City of Fort Worth, and likewise coming from the west going north, south, and east through Fort Worth. It is also the street generally used by the residents of Fort Worth, who live in that part of the city, west of the Clear Fork of the Trinity river, known generally as Arlington Heights, River Crest, Hi-Mount, and Westover Hills additions. Many citizens who live on what is known as "The Southside," and in the southwestern portion of the city, use West Seventh street to reach the business portion of the city, and pass the property in question.

West Sixth street is one of the main arteries in that it leads into West Seventh street, as pointed out above, and State Highway No. 1 markers have been put up, routing vehicles over West Sixth street. West Seventh street is a part of such Highway No. 1.

Thus it will be seen that appellee's customers are those who are driving east on West Seventh street, those driving west thereon, and those driving east and west on West Sixth street.

Appellee's patrons driving west on West Seventh street need only to turn into its service station, on their right. The proposed improvements cannot interfere with them in any manner.

Its patrons driving east on West Seventh street need only give the usual hand signal, as they approach the intersection of West Sixth with that of West Seventh street, and turn into West Sixth street and drive into appellee's service station. The proposed improvements cannot in any wise interfere with these patrons. The only patrons of the appellee who could be interfered with in the slightest degree are those who may be traveling west on West Sixth street and who may desire to purchase oil, gas, or grease from appellee.

But appellee's service station is on the left-hand side of such travelers and prospective patrons, and, in order to reach appellee's service station, when traveling West Sixth street, going west, the patron must either violate the traffic ordinances of the City of Fort Worth, by turning to the left across West Sixth street and into appellee's service station, or such patron must pass the center of the intersecting street (West Seventh, here) before turning to the left and then head in the direction of the traffic on that side of the street. This is the plain language of the ordinance. To comply with such ordinance, appellee's prospective customers, driving west on West Sixth street, must make what is customarily

known as a "Ú turn" at the intersection of Sixth and Seventh streets, in order to get back to appellee's service station, lawfully.

The photographs introduced in evidence show plainly that any prospective patron of the appellee, who is driving his vehicle down West Sixth street, in a westerly direction, can see every sign, part, and portion of appellee's service station, after the proposed improvements are made by appellants, long before he is required to lawfully make his "turn," in order to reach the service station, and even long before he undertakes to obtain service at the hands of appellee, by unlawfully turning to his left across West Sixth street, to reach the service station.

■ The injunction is one of our harshest remedies. It is purely an equitable proceeding. To be entitled to it, in a case such as the one before us, one must show a clear right on his part and a certain injury that will reasonably flow from interference with such right. This seems fundamental to us. Cain v. Trueheart (Tex.Civ.App.) 12 S.W. (2d) 239.

What are appellee's rights, under the lease before us?

Among the most valuable are quiet and uninterrupted enjoyment of the premises. This it has and will have after the proposed improvements are made. Maintenance of the premises so that ingress and egress may be easily had by the lessee and its patrons. This it has, and will continue to have after the improvements are made. Such use of the premises by the lessor as that its signs, as displayed, will not obstruct the view as it relates to the lessee's signs and equipment. This it has, and will continue to have after the improvements are made. Unless it may be reasonably said that the proposed improvements, when added to appellant's building, on its north side, will in all reasonable probability affect the accessibility of and ease of approach to appellee's service station, by its patrons, or that it will in all reasonable probability obstruct the vision of appellee's prospective patrons so that they will not see its advertising signs and its equipment, and fail to be thereby attracted to it as customers, then it appears to us that appellee cannot equitably ask that appellants be enjoined from the lawful use of its premises. Appellee has met no such burden.

Paragraph 5 of the lease means no more than that appellee agrees not to maintain its signs in such a manner as that they will unreasonably interfere with the display advantages of the premises occupied by lessor, and that lessor agrees to the maintenance of its signs in like manner, so as to protect lessee's display advantages.

We cannot find anything in the contract expressed, or implied, that would warrant us in applying these provisions to any addition that might be made to improvements now upon the premises. To do so would amount to the making of a contract for the parties, by the court. This we cannot do.

The provisions found in paragraph 6 of the lease, to the effect that the improvements and equipment, erected by the lessee must "conform generally with the architectural plans of the improvements erected by lessor" on its portion of the premises, were evidently inserted solely for the purpose of maintaining harmony in the appearance of all of the improvements and to maintain attractiveness, in so far as may be possible, in the appearance of the improvements. No other construction of the language seems reasonable to us.

If appellants may not, under the terms of this contract, extend its building further north, then, by the same token, appellee could not erect even one more pump, or hang one more "sign" on its portion of the premises. Nor could it change the styles of its pumps from small to large, nor the size of its "signs."

■ A court of equity, in determining whether an injunction shall issue, must consider the equities of the case. "The conveniences and hardships that may result from the granting or refusing of the writ are balanced. The court will consider whether there is a probability of greater damage to the defendant if the writ be granted than to the plaintiff if it be denied." 24 Tex.Jur. par. 96, p. 136.

Here, the great damage, that will necessarily be done appellants by denying them the right to enlarge their business plant, overshadows the problematical injury that may flow to appellee by reason of the loss of some sales. Under the facts here disclosed appellee's probable loss is purely speculative.

■ We decline to say that, under the terms of the contract before us, the appellants are duty bound to maintain the improvements on their portion of the premises just as they were, when the parties made their contract, or when they were erected in accordance with the contract. And we decline to hold that any addition made

thereto by appellants which does not interfere with the ingress and egress enjoyed by appellee and its patrons, and which does not materially interfere with the view of appellee's signs and premises by its prospective patrons, violates either the letter or spirit of the lease contract.

██ Property rights in a thing consist in more than mere ownership and possession. The unrestricted right of its use, its enjoyment, and its disposal must, of necessity, go with the right of ownership and possession.

"Anything which destroys any of these elements of property, to that extent destroys the property itself. The substantial value of property lies in its use. If the right of use be denied, the value of the property is annihilated and ownership is rendered a barren right." Spann v. City of Dallas, 111 Tex. 350, 235 S.W. 513, 514, 19 A.L.R. 1387.

Accordingly, the judgment of the trial court is reversed, and judgment is here rendered in behalf of appellants, dissolving the injunction granted by the trial court.

Reversed and rendered.