John G. DAVIS et ux., Appellants,

v.

J. S. CAROTHERS et al., Appellees.

No. 3625.

Court of Civil Appeals of Texas.

Waco.

April 21, 1960.

Rehearing Denied May 19, 1960.

Robert L. Sonfield, Houston, for appellants.

William E. Junell, Houston, for appellees.

TIREY, Justice.

The action is one of a bill of review. The cause was tried without the aid of a jury and the Court:

(1) Granted plaintiffs' bill of review and set aside and held for naught the judgment previously rendered on January 20, 1955 by the 55th District Court of Harris County in Cause No. 440481, styled: John G. Davis v. Baldry, et al.;

(2) He decreed that Mrs. Kathryn Davis, individually and as independent executrix of the estate of John G. Davis, deceased, be permanently enjoined and prohibited:

(a) From constructing, maintaining or operating or permitting the operation of any kind of business house or commercial establishment on any part of either lots 1 and 2 in block 2 of Santa Rosa Addition, Section 1, in Harris County, according to the plat recorded in Volume 18, Page 34, of the map records of Harris County;

(b) From using any part of either one of said lots for any business purposes whatsoever;

(c) From constructing or permitting to remain any type of improvement on all or any part of the two lots other than a single family dwelling; and

(d) From building or maintaining on any part of the lots any business house or commercial establishment;

(3) The Court decreed that Mrs. Davis, individually, and as independent executrix

of the estate of her husband, demolish or cause to be demolished and cause to be removed from lot 1, and a portion of lot 2, the entire gasoline service station now located on the property, together with the concrete driveways, and all other appurtenances thereto;

(4) That Mrs. Davis, individually, and in her capacity as executrix, be permanently enjoined and ordered by the Court to cease and desist from any further use of either of said lots for any business or commercial purposes whatever.

Mrs. Davis, individually, and in her capacity as executrix, duly excepted to the decree entered and perfected her appeal to the Houston Court, and the cause is here on transfer by order of the Supreme Court.

The judgment is assailed on what appellants designate as sixteen points. Points 1 and 2 are substantially to the effect that the Court erred in overruling appellees' motion for summary judgment because plaintiffs in their original petition failed to join as defendants all the parties named in the suit wherein appellees obtained judgment in the 55th District Court, and appellants contend that by reason of such failure appellees' suit constituted a collateral attack on the prior judgment.

A comprehensive statement is necessary. On August 19, 1954, John G. Davis, filed a class suit in the 133rd District Court of Harris County, for the purpose of removing certain restrictions limiting the use of their property, being lots 1 and 2 in block 2 of Santa Rosa Addition of Harris County, and asking the Court to decree that he be permitted to use such property for business and commercial purposes. On August 27th, plaintiff, Davis, filed his first amended original petition. On October 14, 1954, Davis filed a motion for summary judgment, and the cause was set for hearing, but after hearing argument on the motion, the Court suggested that the suit should be heard on its merits and no further action was taken on the motion. Thereafter, the cause was tried on the merits before the Honorable Ewing Boyd of the 55th

District Court. That Court, after hearing evidence, on January 20, 1955, entered a judgment in favor of plaintiff, Davis, decreeing that the property there in controversy was unrestricted. On June 28, 1955, the cause here on appeal was filed in the 80th Judicial District Court of Harris County by the appellees, and in this suit plaintiffs set out that they were the owners of property in Santa Rosa Addition, and alleged among other things that the plaintiff and the defendants in the prior suit conspired to keep the pendency of the prior suit a secret from the other property owners within the addition and that none of the property owners and residents knew of such suit or the judgment taken therein until more than 30 days after the rendition of such judgment. The plaintiffs, in the suit filed June 28, 1955, sued as a class representing all the property owners within the addition who desired to retain the restrictions in full force and effect. On July 6, 1955, the appellants here filed motion for summary judgment. The Court, after hearing argument on this motion, overruled it on August 23, 1955. The plaintiffs (appellees here), in their original petition filed June 28th, in paragraph 13, specifically alleged:

"Defendants plan to demolish the two residences located on the property owned by the defendants, and to construct thereon a large gasoline service station. Pursuant to this plan defendants have negotiated or are negotiating with Humble Oil & Refining Company or some other large oil company for a lease to such oil company of the service station after its construction has been completed by Defendants. The construction of a service station on the properties owned by defendants will be in direct violation of the restrictions applicable to said property and the defendants will proceed with this plan and will construct said service station unless they are enjoined from doing so by this Court."

On May 1, 1956, plaintiffs in this suit filed notice of lis pendens, and it was prop-

erly indexed by the County Clerk of Harris County. On August 21, 1956, John G. Davis and wife, Kathryn T. Davis, executed and delivered to the Texas Company a lease covering all of lot 1 and 13 feet off of lot 2, block 2 Santa Rosa Addition. Plaintiffs went to trial on their third amended original petition. Pertinent to this discussion they alleged among other things that Davis and his wife had violated the restrictions theretofore imposed upon this addition and were making threats to further violate such restrictions; that after this suit was filed the Davises proceeded to carry out their threats and violations by demolishing the residence building which was situated on lot 1 block 2 of said addition, and that they caused to be constructed on such property and a portion of the lot adjoining the gasoline service station, and that upon its completion they had maintained it as a service station and operated it as such; that the Davises ceased residing in the residence building located on lot 2 adjoining lot 1 of their property, and that they were operating a real estate sales office under the name of Gulf Freeway Realty Company and that such was a violation of the restrictions; that the Davises planned to violate the restrictions by demolishing the residence building located on lot 2 and erect thereon a commercial office building; that these plaintiffs are not bound by the former judgment rendered in this cause nullifying the restrictions because the defendant, Baldry and the other four named defendants in the prior suit were not under the circumstances in the same class with plaintiffs in this suit or with any other property owners residing in section 1 who desired to maintain such restrictions in force; that each of the plaintiffs are interested in the subject matter of this suit because the properties which the plaintiffs owned were sold originally by the subdividers under a general plan to make of the addition a highly restricted residential district and that it would greatly damage the properties of the plaintiffs to cancel the restrictions applicable to the Santa Rosa Addition as they apply to section 1, and that each of the plaintiffs will suffer large damages if the restrictions are removed from said addition, and their properties will depreciate in value if such restrictions are annulled.

Testimony was tendered to the effect that at the time the Davises executed their lease to the Texas Company that the only improvements on the property were a single family residence building and a garage. There was no request for findings of fact and conclusions of law and none were filed. In the judgment we find this recital:

"The Court is of the opinion that the law and the facts are with the plaintiffs and cross-defendants and against the defendants."

And then follows the decree, the pertinent parts of which we have previously stated.

We overrule points 1 and 2 because our Supreme Court in Rogers v. Royalty Pooling Company, 157 Tex. 304, 302 S.W.2d 938, expressly held where the trial court overrules motion for summary judgment there is no appeal from such refusal and the cause remains on the docket for such further proceedings as may be appropriate. Assuming, without deciding, that the question of nonjoinder of necessary and indispensable parties was properly raised by the motion for summary judgment, since the Trial Court refused appellants' motion and such ruling was not appealable, the error, if any, of the Trial Court in overruling that motion was cured by subsequent joinder of said parties as defendants in this cause. See Rules 37 and 39(b), Tex.Rules of Civil Procedure.

Points 3, 4 and 5 are substantially to the effect that the Texas Company, being in exclusive possession of the service station erected on the property under a lease contract, that it was a necessary and indispensable party; that owing to the fact that the National Bank of Commerce of Houston had acquired an interest in a lien created on the property, that it was also a necessary and indispensable party to the litigation, and that by reason of the foregoing,

appellants' second amended plea in abatement should have been sustained, and this cause should have been dismissed. We have previously pointed out that the appellees here filed a notice of lis pendens of this suit on May 1, 1956, and that such lis pendens notice preceded the leasing of the property by the Davises to the Texas Company, as well as the date National Bank of Commerce acquired its lien; therefore, the rights and claims of the Texas Company and National Bank of Commerce are inferior and subsequent to the lis pendens notice. See Article 6640, 6642 and 6643, V.A.T.S. See also Wortham v. Boyd, 66 Tex. 401, 1 S.W. 109; 34 Am.Jur. Sec. 29, p. 384; 28 Tex.Jur. "Lis Pendens", Sec. 23, p. 337; 14 Am.Jur. 669, "Covenants," Sec. 345. Accordingly points 3, 4 and 5 are overruled.

Appellants' point 6 is to the effect that the Trial Court erred in permitting plaintiffs, over objection, to introduce evidence contradicting facts alleged in the petition of plaintiff in prior suit as to the restriction violations and changed conditions within and without said addition which were before the Court in such suit upon which the 55th District Court based its judgment setting aside the restrictions and rendering judgment that such restrictions were void and unenforceable to the property in controversy. We overrule this contention for reasons which we shall briefly state. Plaintiffs, in their third amended original petition on which they went to trial, specifically alleged that said restrictions were placed upon the property in question in order to secure a general plan or scheme set forth in the dedication of the property, and for the purpose of making the lots in this suit known and described as residential lots and not for any other purpose; that said restrictions limiting said land for residential use only was a covenant which ran with the land and still applies to the property within the addition; that plaintiff, when he filed his original suit to remove said restriction, deliberately and maliciously undertook to name said

defendants as parties to said suit and to name no other person as parties to said suit, because he knew that the parties he named as defendants either desired or were willing to have the restrictions to said property declared null and void; that Davis had made arrangements with each of said defendants prior to the filing of said suit to the effect that defendants would not oppose his suit for the relief he sought to obtain therein, and further alleged that Davis and other persons named in the original petition were in collusion and conspiracy to have the judgment entered, and that the defendants named in the suit by Davis did not present any defense whatever but in fact consented to the judgment, and that Davis deliberately refrained from naming as a defendant in that suit, any person who was interested in maintaining the restrictions applicable to said property, and in making any defense to the suit to remove such restrictions. The petition further alleged that Davis and defendants named in the suit brought by Davis deliberately concealed such facts from said property owners until more than 30 days after the entry of the judgment in the suit filed by Davis. Surely, the foregoing allegations were specific enough and broad enough to entitle the appellees here to tender such evidence as they had to sustain the foregoing allegations. The testimony tendered is contained in 975 pages, and there are many exhibits. This record is without dispute that the Davises acquired the property in suit subject to the restrictions placed upon the property by the subdividers, and having accepted the deed subject to the covenants running with the land they were necessarily bound thereby. As we understand appellants' brief they contend that there is no competent evidence to sustain the findings of the Trial Judge in this cause; they do not contend that the evidence is insufficient to support the judgment of the Trial Court, nor that the judgment of the Trial Court is so against the great weight and preponderance of the evidence as to be manifestly unjust. See Re King's Estate, 150 Tex. 662, 244 S.W.2d 660. As above

indicated, it is our view that the allegations in plaintiffs' pleadings on which they went to trial tendered issues of fact, and we think the evidence adduced is sufficient to sustain the implied findings of the Trial Court. We have pointed out that there was no request for findings of fact and conclusions of law, but the Court specifically did find: "that the law and the facts are with the plaintiffs and cross-defendants, and against the defendants," and proceeded to enter the decree which we have set out. In view of the judgment entered we must assume that the Court impliedly found on each of the controverted issues in favor of the plaintiffs. We are of the further view that the evidence tendered is ample to sustain the implied findings in the judgment.

But appellants contend that since The Texas Company was in possession of the filling station and actively operating the same, and since the National Bank of Commerce had acquired and had become subrogated to certain valid outstanding liens on this property, and since said liens referred to were outstanding at the time that the judgment was entered in the suit filed by Davis, and at the time that the appellees filed this suit to set aside the judgment obtained by Davis, and since the Davises, on December 29, 1956, executed and delivered to John E. Whitmore their deed of trust on this property to secure the National Bank of Commerce in the payment of a note of even date with such instrument in the principal sum of $65,000 payable in monthly installments, that the equities of the Texas Company, and the interest of the bank by virtue of having acquired these prior liens made the Texas Company and said bank necessary and indispensable parties to the action here before us. Appellants rely on the doctrine announced by our Supreme Court in Wortham v. Boyd, 66 Tex. 401, 1 S.W. 109, supra. We are not in accord with appellants' views for reasons which we shall hereinafter briefly state. First of all, the evidence is without dispute that at the time the appellants filed their suit and obtained judgment thereon,

and at the time that the appellees here filed their suit to set the Davis judgment aside, the property in question had erected thereon buildings only for residential purposes. The appellees, in their suit to set aside the Davis judgment, sought injunctive relief only for the purpose of maintaining the status quo of the buildings on the property. In other words, it was the purpose of this second suit to preserve the restrictions previously created as covenants running with this property. We think the controversy remained the same from the time this suit was filed until final judgment. It is true at the time the appellees filed their suit to set the judgment aside that only the Davises were made parties defendant. It is likewise true that in the amendments which appellees subsequently filed they brought in the other parties who were defendants in the original suit. The record shows that none of the lienholders or the Texas Company dealt with these added defendants, and failure to join such defendants in the Davis suit, could not and did not inure to the benefit of the Texas Company or the National Bank of Commerce. The Davises were the parties being dealt with by the lienholders, and by the lessee, and the Davises were at all times parties to this suit from the very beginning, and we think that the Davises and the parties dealing with the Davises were bound by the notice of lis pendens; nor do we think that the appellees' third amended original petition introduced a new cause of action. The action was still a suit for an injunction to enjoin the violation of residential restrictions. It was only by reason of the acts of the Davises and the persons dealing with them in tearing down the residential buildings on one of the lots and constructing the filling station thereon that any change whatever was made in the details of the relief sought. It is obvious that in order to enforce effectively the restrictions and prevent their violation, that the mandatory injunction requiring the tearing down of the service station was necessary. This did not change the nature of the cause of action. What we have said with reference

to the Texas Company applies with equal force to the question of whether the National Bank of Commerce is a necessary and indispensable party to this suit unless by the alleged equitable assignment and subrogation, the National Bank of Commerce became a necessary and indispensable party. As we have previously stated, the bank acquired such interest as it had by assignment and deed of trust dated December 29, 1956. This was many months after the filing of the lis pendens notice. We think it is well settled that the holder of a lien accruing during the pendency of the suit is subject to the doctrine of lis pendens. See 28 Tex.Jur., "Lis Pendens", Sec. 23, page 337, supra, and cases there cited. This is a suit to enforce restrictions by injunction, and is necessarily an action to establish an interest or right in real estate or to enforce a charge against real estate. It follows that unless the bank acquired a superior right under the theory of equitable assignment and subrogation not covered by the lis pendens notice, it was not and is not a necessary and indispensable party to this suit. We have previously stated that it is without dispute that when this suit was filed on June 28, 1955, lot 1, block 2, was occupied by a single family residence building and a garage, and lot 2 was similarly improved. Testimony was tendered to the effect that the Davises were residing in the house on lot 2, and the house on lot 1 was unoccupied. There is an absence of evidence to the effect that any of the holders of liens existing prior to the time of the filing of the lis pendens notice was violating or threatening to violate the residential restrictions made the basis of this suit. Up to the time of the filing of the lis pendens notice nothing had been done to any improvements on either of the lots involved to impair the security of any of the lienholders. It is obvious that the relief sought in this case up to that point could not have affected the security of any lienholder, but on the contrary this suit sought to protect such lienholders' rights. Under these circumstances no holder of any lien existing prior to the filing of the lis pendens notice

was a necessary and indispensable party. In fact, the effect of the appellees' suit was to preserve the prior liens outstanding on the buildings on the property. It is also without dispute that the mechanic's and materialman's lien contract executed in connection with the construction of the service station was entered into long after the filing of the lis pendens notice. Certainly the subsequent assignment of that contract and lien to the Pasadena Bank could not have made the contractor or the Pasadena Bank necessary and indispensable parties to this suit. It seems clear to us that the rights acquired by the National Bank of Commerce by equitable assignment and subrogation could not and did not make that bank a necessary and indispensable party to this suit. The bank could do no more than step into the shoes of the parties whose rights it had been and was subrogated.

This court is not unmindful of the great loss that will be sustained by the appellants by the tearing down of the filling station when the mandatory injunction is put into effect, and this has given us much concern, but as we view the record we are without power to give the appellants any relief. It follows that from what we have said appellant's points 1 to 11, inclusive, are each overruled. In addition to the Texas authorities see also Sanders v. Dixon, 114 Mo.App. 229, 89 S.W. 577; Forster v. Raznik, 1907, 46 Wash. 692, 91 P. 252.

Appellants' points 12, 13 and 15 complain of the action of the Court in (1) permitting the witness, Bracewell, to testify that deeds covering property in Section 1 of Santa Rosa Addition were made subject to the restrictions and conditions; and (2) in permitting C. I. Thomason to testify that all the deeds signed by him conveying the property in Santa Rosa Addition, Section 1, contained provisions making conveyances subject to recorded restrictions. Bracewell testified to the effect that he was a lawyer and practiced since 1944 in Houston with his father's firm; that such firm had represented the Parkers for thirty years

continuously; that they also represented R. C. Heiner, and represented him in the years of 1940 through 1945; that Heiner now resides in Banner, Arkansas, the place where he moved from Houston three or four years ago; that since August, 1944, all deeds from the Parkers to Heiner were prepared by Fentress Bracewell; that all such deeds conveying property in Section 1 of Santa Rosa Addition from the Parkers to Heiner were prepared by him and contained the stipulations that the conveyances were subject to recorded restrictions. Thomason testified to the effect that he had been employed by Parkers for 20 years; that the Parkers actually signed the power of attorney introduced into evidence; that after October 21, 1941, the date of the execution of the power of attorney, Thomason executed deeds under that power of attorney, conveying various lots in Section 1 of the Santa Rosa Addition to R. C. Heiner; that Thomason went to the County Clerk's Office and read the record of the deed recorded in Volume 1311 at Page 116 of the Deed Records of Harris County, Texas, and Thomason testified that he signed that deed as agent and attorney in fact for Parkers and delivered it to R. C. Heiner; that the original of that deed was prepared in the office of J. S. Bracewell, attorney; that he executed other deeds conveying property in Section 1 of Santa Rosa Addition to Heiner, and that all of the deeds he executed conveying the property in Section 1 of Santa Rose Addition to Heiner contained the stipulation that the conveyances were to be made subject to the recorded restrictions. We think the Rule in Texas is that where title to property or some interest therein, or some transaction or incumbrance of it is involved only secondarily, incidentally or collaterally, oral evidence of such ownership and transfer may be made without producing the respective documents. See Monk v. Danna, Tex.Civ.App., 110 S.W.2d 84, W. dis. In Cocke v. Southland Life Insurance Company, Tex.Civ.App.1934, 75 S.W.2d 194, 200, (W. ref.) we find this statement of the Rule:

" * * * that the best evidence rule does not apply to writings collateral to the issue then being tried; that where the execution or existence of a writing as distinct from its contents does not form the foundation of the action, although material to the controversy, the production of the writing is not required, but its execution and existence may be proved by parol." See cases cited.

See Larrabee v. Porter, Tex.Civ.App., 166 S.W. 395, pt. 10, on page 405; McCormick & Ray, 1937 Ed. p. 925, Sec. 711, and cases cited under Note 56. See also Bains v. Parker, 143 Tex. 57, 182 S.W.2d 397, pt. 12; 32 C.J.S. Evidence § 794, p. 725; 17 T. J. p. 490, Sec. 190. Under the foregoing authorities we think the testimony of Bracewell and Thomason was admissible. Moreover, we think that the evidence with reference to the dedication and the map, together with the restrictions contained in the written instruments, the deeds to the Davises and the testimony of various witnesses to the effect that the property in Section 1 was actually developed by the building of residences, and that they bought property in Section 1 of Santa Rosa Addition in reliance on the existence of residential restrictions, was sufficient evidence of the adoption of a general plan or scheme for the development of the property in Section 1 as a restricted residential subdivision. See Abernathy v. Adoue, Tex.Civ. App., 49 S.W.2d 476. Accordingly, points 12, 13, 14 and 15 are overruled.

Point 16 complains of the error of the Trial Court in permitting various residents of the Santa Rosa, Section 1, Addition and members of the Reveille Civic Club to testify, over the objection of defendants, to conversations with John G. Davis, deceased, with respect to the prior suit. We overrule this point for reasons hereinafter briefly stated. The witnesses Simmons, Shin and Hood testified to conversations with John G. Davis, deceased. Neither of the foregoing witnesses were owners of property in Section 1, of Santa Rosa Addi-

tion, nor are they plaintiffs in this lawsuit. The only proper parties plaintiff in this cause are the owners of property in Section 1, and such property owners are the only actual parties plaintiff. It is true that appellants brought Simmons, Shin and Hood into this case as third party defendants in a cross-action filed by appellants for alleged wrongful and malicious prosecution of a civil case. The fact that Simmons, Shin and Hood were cross-defendants in such cross-action did not disqualify them under the Dead Man's Statute, Vernon's Ann.Civ. St. art. 3716. See Ragsdale v. Ragsdale, 142 Tex. 476, 179 S.W.2d 291, points 8 to 10. See also 14–A Tex.Jur. Page 821; Atkins v. Dodds, Tex.Civ.App., 121 S.W.2d 1010. From what we have said it follows that we are of the view that appellants have been unable to point out any reversible error, and each of appellants' contentions is overruled. Accordingly, the judgment is affirmed.

### On Motion for Rehearing

In our original opinion, we stated: "This court is not unmindful of the great loss that will be sustained by the appellants by the tearing down of the filling station when the mandatory injunction is put into effect. * * *" This question still gives this Court much concern and we have given much more consideration to it on Appellants' Motion for Rehearing. As we understand the evidence, appellants' property fronts on the northeast corner at the intersection of Reveille Road with Park Place Road in the City of Houston; that directly across Park Place Road, and at the northwest corner of the intersection there is constructed a large filling station; at the southwest corner there is another large filling station; at the southeast corner there is now constructed a grocery store and a liquor store, and there is a suit pending (according to statement of counsel in oral argument) with reference to the grocery store and the liquor store, and this suit has not been tried and is awaiting the outcome of the Court's action in this cause. Much testimony was tendered with reference to

the damage that would be sustained by the residents in this particular addition; some of the witnesses testifying that there would be no damage; others testifying to various amounts but the highest damage testified to by any witness was the damage to the property next to the Davis property, and such witness estimated such damage to be the sum of $500; some witnesses testified that other lots in the addition had been damaged to the extent of $500. This Court permitted oral argument on Motion for Rehearing, and during the argument one member of the Court asked counsel for appellees what he would consider to be the relative losses of appellants and appellees if he should attempt to balance the equities between the parties and his answer was to the effect that if the filling station was torn down under the terms of the mandatory injunction that appellants' loss on the building would be in the neighborhood of $125,000, and that was his estimate of the loss without the expense of tearing it down. No testimony was tendered as to the cost of tearing down the station, but counsel for appellees and appellants each were of the view that the expense incurred would be a substantial sum. A member of the Court made inquiry of appellees' counsel as to what the Trial Court in this cause said, if anything, with reference to the balancing of the equities at the time he entered the order and counsel stated that the Trial Judge said in effect that he did not know what the situation would be with reference to the particular matter two years from the date he entered the judgment, which was in May 1958, but as of that date he would grant the bill of review and enter an order granting a mandatory injunction and direct the appellants to tear down the building. As we understand the record, when this cause was before the 55th Judicial District of Harris County in January, 1955, the factual situation at the street intersection was substantially the same as now, except the fact that appellants' two residences located on their property were still standing. The 55th District Court, after hearing the testimony, entered the order holding that the

property was not under restrictions. Therefore, we have two Courts of equal dignity and jurisdiction maintaining opposite views with reference to this factual situation. We think that we should state that when the appellees filed their original bill to set aside the Court's judgment (declaring that the property was free from restrictions) that they did not ask for a temporary injunction. The record shows that the appellees filed their second amended original petition on July 27, 1956, and that they did not ask for a temporary injunction in this petition. Appellees went to trial on their third amended original petition filed November 6, 1957, and in that pleading they set up for the first time that a filling station had been constructed on the property, but did not state just when the filling station had been constructed. They did set out in the last pleading that they had been damaged in the sum of $20,000, because the appellants had violated the restrictions in the construction of the station, and the appellees asked for the first time that the station be demolished. The record does not show exactly when the station was constructed but counsel indicate and agree that it was subsequent to the filing of the Lis Pendens Notice, which was on May 1, 1956, and the record shows that the lease from the Davises to the Texas Company was executed on the 21st day of August, 1956, and that the building was constructed either in late 1956 or early 1957. The record shows that during the time that the building was being constructed that appellees were aware of such construction but that they made no effort to have the Court grant a temporary restraining order. The record shows that some several months passed from the beginning of the construction of the building until it was completed and occupied by the Texas Company and that during the construction counsel for appellees did not ask the Court for temporary writ to halt the construction. Counsel for appellees in their brief and oral argument stated that the reason they did not ask the Court for a temporary injunction was due to the fact that if it had been granted they

would have had to execute a bond and they did not want to obligate themselves to give a bond to prevent the construction of the building because they did not want the further expense of litigation on the bond in the event they should not prevail.

■ We think the Rule in Texas is that a party seeking injunctive relief "must not only show that injustice has been done him, but he must, in addition, show that he has not been wanting in the proper diligence, and he must disclose clearly that there has been no negligence on his part." See Morris v. Edwards, et al., 62 Tex. 205, point on page 208, and authorities there cited. In Simon v. Nance, Tex.Civ.App., 142 S.W. 661, n. w. h., we find this statement of the Rule:

"It is undoubtedly the law that before a party is entitled to a mandatory injunction it must appear that he would suffer material and substantial injury if the writ were refused. * * * Where the damage is so very small and the right so unimportant as to make the case a trivial one, equity will dismiss the bill." See point 3 at page 663.

See Dallas Hunting & Fishing Club v. Dallas County Bois D'Arc Island Levee District, Tex.Civ.App., 235 S.W. 607, point 2 at page 612, n. w. h.; Los Angeles Heights Independent School Dist. v. Chestnut, Tex.Civ.App., 287 S.W. 693; Transport Company of Texas v. Robertson Transports, Inc., 152 Tex. 551, 261 S.W.2d 549, points 1 to 4.

We do not find any allegation in appellees' petition to the effect that they had used diligence to prevent the construction of the filling station by the Davises. Counsel for appellant stated in oral argument that when the appellees filed their case that they seasonably called for a jury and paid the jury fee, and had the case placed upon the jury docket, and at that time the crowded condition of the jury docket at Houston was that ordinarily a jury case could not be tried under two years or more. Appellees' counsel stated in oral argument that the

reason they placed the case on the jury docket was due to the fact that he at that time thought he would have to try the case before Judge Ewing Boyd (55th District Court) and he was unwilling to submit the matter to Judge Boyd in view of the previous judgment he had entered in 1955. The questions arise: Would not Judge Boyd have been in a better position as Judge of the 55th District Court to determine whether or not the Court had been deceived or imposed upon and induced by fraud to hold that the property was free from restrictions? Could the 80th District Court adequately and fairly determine whether or not the 55th District Court had been deceived? We think the questions answer themselves.

■ That brings us to the doctrine of the balancing of the equities. That question gives us great concern for two reasons: First of all, there is a conflict in the decrees entered by the 55th and the 80th District Courts, these Courts being of equal dignity and equal jurisdiction in the same community. Needless to say these decrees are in irreconcilable conflict, and we are face to face with a most unusual situation, because if the mandatory injunction is allowed to stand the Davises will suffer a loss estimated by counsel for appellees to the amount of approximately $125,000, plus the expense of carrying out the mandate of the injunction, while on the other hand, the property owners in the addition will suffer minor losses compared with the loss sustained by the Davises. According to the record the greatest loss to be suffered by any property owner in addition would be in the neighborhood of $500 if the filling station is allowed to stand. It seems to us that the weighing of the losses to be sustained by the appellants as against the benefits to be received by the appellees must be controlling here. "A court of equity is a court of conscience. The function of the chancellor is, upon equitable consideration, to winnow the wheat from the straw, and his decree will not be set aside on appeal unless, * * * it is made to appear that it is not equitable but inequitable to let it

stand." See Durkin v. Lovknit Mfg. Co., 5 Cir., 208 F.2d 665, 667, points 3 to 5, Hutcheson, C. J. See Humphrey v. Humphrey, 254 Ala. 395, 48 So.2d 424, 31 A.L.R.2d 315. Also see 24–A Tex.Jur. Sec. 58; "Injunctions," 28 Am.Jur. Sec. 52; "Injunctions," 28 Am.Jur. Sec. 53; 43 C.J S. Injunctions § 30, p. 462; 43 C.J.S. Injunctions § 87, p. 590; Joyce on Injunction, Vol. 1, Sec. 25; Brown, et al. v. Grant, Tex. Civ.App., 2 S.W.2d 285, n. w. h.; General Tire & Rubber Company, et al. v. Texas Pacific Coal & Oil Company, Tex.Civ.App., 102 S.W.2d 1086, err. ref.; Smiley, et al. v. City of Graham, et al., Tex.Civ.App., 37 S.W.2d 289, 290, err. dis.; Rice & Adams Corporation v. Lathrop, 278 U.S. 509, 49 S.Ct. 220, 73 L.Ed. 480.

■ This record shows that this particular location is only a short way from the new super freeway and that this particular area is fast developing from a residential section to a commercial or semi-commercial area; that the commercial development in this area has been so extensive that it renders the restrictions of little benefit to the residents in the Santa Rosa Addition. In fact, the situation in that particular area is such that the tearing down of the filling station cannot have any substantial benefit to the residents of the Santa Rosa Addition because of the development in the area, and the filling stations already built on the northwest and the southwest corners; these filling stations are not under any attack; so, we have here a situation where the foregoing facts and circumstances cannot be altered subtantially by the tearing down of the station built by the Davises.

Under the foregoing situation this Court has come to the conclusion that the enforcement of this injunction would be so inequitable, oppressive, harsh and unconscionable that we ought not to give our approval thereto under all the facts and surrounding circumstances here before us.

The Supreme Court of the United States in Parker v. Winnipiseogee Lake Cotton

& Woolen Company, 2 Black 545, 17 L.Ed. 333, we find this statement:

"A Court of equity will interfere when the injury by the wrongful act of the adverse party will be irreparable, *as where the loss of health, the loss of trade, the destruction of the means of subsistence or the ruin of the property must ensue.*" (Emphasis added.) ·

We realize that the foregoing Rule is very general, but as we understand the undisputed factual situation here it is certain that the destruction of appellants' property would entail a tremendous loss, and that the property would have little value for residential property or value for anything other than business property; and that the benefits accruing to the residents of the addition would be trivial compared to appellants' losses. A Court of equity will not require the doing of a useless thing; nor will it lend its powers to accomplish a useless purpose, nor will it grant a decree which does not confer any real benefit or effect any real relief. See 30 C.J.S. Equity § 16, p. 336, and cases there cited. There is another general Rule to the effect that equality is equity, and that it is applicable to burdens as well as to rights and that equality of burden is equity. See 30 C.J.S. Equity § 109, p. 517, and cases there cited. Also see Malott v. City of Brownsville, Tex.Com.App., 298 S.W. 540, pt. 2–3. 15A Tex.Dig., Equity, ☞54.

Since this cause must be reversed and remanded, and since the Texas Company owns the lease and is in possession of the filling station, and since the National Bank of Commerce of Houston has a large indebtedness against the property secured by a valid lien, this Court is of the view that equity and good conscience require that the Texas Company and the National Bank of Commerce be made parties defendant in this cause, in order that each may present such claims, if any they have, as to why appellees' application for manda-tory injunction should not be granted and enforced against them. In Elmendorf v. Taylor, 10 Wheat. 152, 162, 165, 166, 6 L. Ed. 289, we find this statement of the Rule (See Baldwin v. Chase Nat. Bank of City of New York, D.C., 16 F.Supp. 918, quotation at page 920, and cases there collated):

"Courts of equity require, that all the parties concerned in interest shall be brought before them, that the matter in controversy may be finally settled. This equitable rule, however, is framed by the court itself, and is subject to its discretion. It is not, like the description of parties, an inflexible rule, a failure to observe which turns the party out of court, because it has no jurisdiction over his cause; but being introduced by the court itself, for the purposes of justice, is susceptible of modification, for the promotion of those purposes."

This Court, after much consideration, is of the view that the mandatory injunction entered by the Court in this cause is too harsh, and would work too great an injury and oppression upon the appellants, and that the benefits to be received by the appellees by destruction of this building are out of all proportion to the loss that would be sustained by the appellants. In Texas our courts adhere to the equitable principles that "In the application of equitable principles, the letter should not be emphasized over the substance of things, for sometimes 'The letter killeth but the spirit giveth life'". See Texas Employers' Ass'n v. Cashion, Tex.Civ.App., 130 S.W.2d 1112, 1113, writ ref. It is true that we have not found any Texas case discussing a factual situation comparable to the one before us, but we are now of the view that the application of equitable principles to this factual situation requires us to grant Appellants' Motion for Rehearing and reverse and remand this cause in order to satisfy the demands of justice. See Magee v. Young, 145 Tex. 485, 198 S.W.2d 883, point 3.

Accordingly, Appellants' Motion is granted and this cause is reversed and remanded.

WILSON, Justice (concurring in result).

I concur in the result, but not in most of the reasoning supporting it in the opinion. I am not certain the appeal to conscience would evoke the same response in chancery if the liquor store referred to in the opinion, for example, was involved, rather than the interests of a widow. I have serious misgivings concerning the precedential effect of the application of some of the equitable principles referred to, as to which I prefer not to be bound.