NO. 07-03-0119-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



APRIL 2, 2003



______________________________




IN RE BENJAMIN A. HASSLER, JR.,


_________________________________






Before QUINN and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION


 Relator Benjamin A. Hassler, Jr. seeks a writ of mandamus directing respondents
the Honorable John T. Forbis, senior judge, and Stuart Messer, district attorney of Carson
County, to consider and rule on an application for temporary restraining order relator filed
with the district clerk of Carson County on February 11, 2003. We must deny relator's
petition.

 From the documents relator has appended to his petition filed with this court and
other documents relator has submitted with his petition, it appears that relator filed a
petition for bill of review assigned cause number 9251 in the district court for the 100th
judicial district, Carson County, on December 10, 2002. In that petition, relator states that
he was convicted of murder on August 24, 1970, in cause number 1645 in the 100th district
court, Carson County, and that the judgment on that conviction contained an error by which
relator was deprived of credit for the 262 days he was confined in jail before his conviction
and sentencing. Relator states that he received the maximum sentence of 99 years
confinement, and argues that the erroneous failure to give him credit for the 262 days jail
time resulted in an illegal sentence of over 100 years. Further, relator states that with the
proper credit for the 262 days jail time, and with other credits relator has accumulated
during his prison confinement, he should have been discharged from the Institutional
Division of the Texas Department of Criminal Justice no later than February 28, 2003.
Relator's application for a temporary restraining order raises the same issues.

 In his petition for writ of mandamus, relator states that the respondents have refused
to consider his application for a temporary restraining order, and asserts that he has now
served a longer sentence of confinement than is required by law.

 "Mandamus issues only to correct a clear abuse of discretion or the violation of a
duty imposed by law when there is no other adequate remedy by law." Johnson v. Fourth
Court of Appeals, 700 S.W.2d 916, 917 (Tex. 1985), quoted in Walker v. Packer, 827
S.W.2d 833, 839 (Tex. 1992). One seeking issuance of a writ of mandamus must provide
a sufficient record to establish his right to such relief. Walker, 827 S.W.2d at 837. The writ
sought by relator here, directing the consideration of pleadings he has filed with a trial
court, would issue only on a clear showing that the respondents have a legal duty to
perform a nondiscretionary or ministerial act; that they have been requested to perform the
act; and that they have refused to do so. Barnes v. State, 832 S.W.2d 424, 426
(Tex.App.--Houston [1st Dist.] 1992) (orig. proceeding) (citing Stoner v. Massey, 586
S.W.2d 843, 846 (Tex. 1979)). The record before us does not show that any of those three
prerequisites are satisfied. This court has held that the acts of giving consideration to and
ruling on motions properly filed and pending before a trial court are ministerial acts the
performance of which, in a proper case, may be enforced by mandamus. See In re
Christensen, 39 S.W.3d 250 (Tex.App.--Amarillo 2000) (orig. proceeding). But the record
before us does not reflect that the persons relator has named as respondents at this time
have any legal duties with respect either to the bill of review proceeding or the temporary
restraining order application. We take notice that Judge Forbis is a retired district judge and
that Mr. Messer is the 100th district attorney. Even if we assume, which we do not, that
either of the named respondents has a present legal duty with respect to relator's filings,
the record provided us does not show either that the matters have been brought to their
attention or that they have refused to take action on them. 

 Relator's request for mandamus relief must be denied for another reason as well.
What the record before us does show is relator's use of the civil action of a bill of review
in his effort to correct what he contends is a time-served error in his now long-final murder
conviction. A bill of review is not the proper vehicle for that effort. Cf. Jackson v. Johnson,
69 S.W.3d 372 (Tex.App.--Texarkana 2002, pet. denied). The Court of Criminal Appeals
has held that the duration of an inmate's confinement and applicable time credits are
proper subjects for an application for a writ of habeas corpus under Texas Code of
Criminal Procedure article 11.07 (Vernon 2002). (1) Ex parte Ruthart, 980 S.W.2d 469, 470
(Tex.Crim.App. 1998). Indeed, article 11.07 provides that, after conviction, its procedures
are exclusive and that "any other proceeding shall be void and of no force and effect in
discharging the prisoner." See also, In re Stone, 26 S.W.3d 568, 569 (Tex.App.--Waco
2000) (orig. proceeding) (court of appeals lacked jurisdiction to act on application for writ
of mandamus directed to trial court; under article 11.07, only Court of Criminal Appeals has
jurisdiction to grant such post conviction relief). Texas Government Code Section 501.0081
requires that an inmate first make use of the dispute resolution system created under that
section with respect to claims of time-served credit errors made after January 1, 2000, but
that section makes clear that article 11.07 provides the proper ultimate remedy for such
claims.

 The Texas Supreme Court has stated that mandamus is not issued as a matter of
right, but at the discretion of the court, and that although mandamus is not an equitable
remedy, its issuance is largely controlled by equitable principles. Rivercenter Assoc. v.
Rivera, 858 S.W.2d 366 (Tex. 1993). A court of equity will not require the doing of a
useless thing; nor will it lend its powers to accomplish a useless purpose. Davis v.
Carothers, 335 S.W.2d 631 (Tex.Civ.App.--Waco 1960, writ dism'd). We would be doing
relator no favor to exercise our discretion to encourage him in the vain pursuit of a
proceeding that is void and of no force or effect. We decline to do so.

 For these reasons, relator's petition for a writ of mandamus is denied.


 James T. Campbell

 Justice



1. This is not relator's first proceeding in this court. In 2001, relator filed an original
proceeding seeking a writ of mandamus to compel the presiding judge of the 100th district
court to rule on his nunc pro tunc motion to have his judgment of conviction reflect credit
for the 262 days as time served. In this court's opinion, not designated for publication,
denying relator's requested relief, we suggested the possibility of an application for a writ
of habeas corpus under article 11.07. Although relator makes reference in his petition for
a bill of review to a 1994 writ of habeas corpus, we cannot tell from the documents relator
now presents to us whether, since 2001, he has presented his claims in a proceeding
under article 11.07, or in one brought under section 501.0081 of the Government Code.
In re Hassler, No. 01-0273-CV (Tex.App.-Amarillo July 24, 2001, pet. denied).


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-10-0442-CV

 

IN THE
COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL D

 

MARCH 7, 2011

_____________________________

 

KURT TORSTER and GEA GROUP, AG,  

                                                                                                                                                                                                                    Appellants 

v.

 

PANDA ENERGY MANAGEMENT, LP, PLC II, LLC,

and PANDA ENERGY INTERNATIONAL, INC., 

                                                  Appellees

_____________________________

 

FROM THE 222nd DISTRICT COURT
OF DEAF SMITH COUNTY;

 

NO. CI-08J-085; HONORABLE
ROLAND SAUL, PRESIDING

_____________________________

 

Memorandum Opinion

_____________________________

 

 

Before QUINN, C.J.,
and CAMPBELL and PIRTLE, JJ.

            What
we have here is an interlocutory appeal from an order denying the motion of
Kurt Torster and GEA Group, AG
requesting that the cause be arbitrated per the Federal Arbitration Act, i.e. 9 U.S.C. §§1-16. The dispute between the parties has travelled a
rather long and winding road.  Originally
initiated in state court, it sojourned through federal territories via removal
and bankruptcy statutes.  Ultimately, the
United States District Court for the Northern District of Texas, Amarillo
Division, sent it home
to Deaf Smith County.  In doing so, that
court thoroughly discussed the nature of the controversy and lawsuit in its
order remanding the cause.  See Panda Energy Mgt., L.P., et al v. GEA Group, A.G., et al, No. 2:08-CV-208-J (N.D. Tex. April
12, 2010) (Order Granting Plaintiffs Motion to Remand). 
We thank the court for doing so and liberally borrow for use here many
of its words.  But, before continuing, we
inform the litigants that the trial courts decision to forego arbitration is
affirmed.

            Background

            Kurt
Torster is a resident of Houston.  Panda
Energy Management, LP, PLC II, LLP, and Panda Energy International, Inc.
(collectively referred to as Panda Energy or Panda) sued Torster for fraud and negligent
misrepresentation relating to representations he made during March of 2005, and
before July 13, 2005, directly to Panda Energy. 
The latter alleged that they were investors who relied on Torsters
representations in deciding to invest millions in a proposed ethanol conversion
project in Hereford, Texas, and in three or four other projects that Panda
Energy was trying to
develop.  

            Torster
was CEO of non-party Lurgi PSI, Inc. at the time the representations were
made.  Panda Energy alleged that his
representations were made falsely and for the purpose of recklessly building up
a list of valuable business contracts which were booked (recorded on company
books as profitable executed contracts). 
They also alleged the existence of a fraudulent scheme where more
projects were booked than could be timely begun or successfully completed by
Torster or GEA, or GEAs wholly owned subsidiary, Lurgi PSI, Inc.  Panda Energy also alleged that the scheme or
plan was to book as many contracts on Lurgis books as possible, and for Lurgi
to then be sold off to inexperienced buyers for the immediate realization of
profit to Torster and GEA.  Furthermore,
at the time Torsters representations were made, GEA had existing, but undisclosed,
plans to reorganize and divest Lurgis less profitable lines of work, that is,
the booked ethanol conversion projects, according to Panda.  

            As
part of the inducement to invest in and eventually execute the engineering
design and construction contracts, GEA issued a guaranty of performance for
Lurgis performance on the Hereford plant contract. 
It was also said that by the time the guaranty was called upon, GEA had
already sold its European and U.S. construction subsidiaries to buyers who were
not experienced in such projects.  GEA
allegedly knew that it would have to rely entirely on the promises of the
inexperienced buyers to complete the projects and backstop GEAs guarantee, but
accepted that future risk to realize immediate profits.  When GEA refused to honor its guaranty, the
Hereford plant was one project that suffered construction delays, cost overruns
and other problems, was a loss to investors, and was ultimately not completed
causing millions of dollars in losses to Panda for which losses Torster and GEA
were liable.

            It
was further alleged by Panda that, as a result of the scheme, Lurgi PSI, Inc.,
and its successor in interest, failed to construct over eight ethanol plants,
including the one at issue here.  The
fraud purportedly worked because GEA booked a contract once it came to
financial closure without regard to contingencies that would arise in the
contracts performance.  Torster was also
handsomely rewarded with a bonus that depended only on financial closure, that is, the project being booked
for a paper profit upon execution of the contract, and that failure to actually construct was of no
moment to Torster or GEA.  Additionally,
Torster made the alleged misrepresentations because of bonuses he realized; so,
he had a personal financial motive or incentive to book the executed contracts
and receive his portion of the schemes reward.

            Panda
Energy also alleged that GEA and Torster promoted ethanol conversion plants
directly to it with assurance of GEAs and Lurgis competence to engineer and build the plants and
thereby induced the investors to form and fund a project company (PHE) that
would secure additional financing to hire Lurgi.  But for the fraud committed, says Panda, the
latter would never have entered the ethanol business with Lurgi.   

            As
for the matter of arbitration, that topic arose from a clause in the
construction contract executed between PHE and Lurgi.[1] 
That none of the litigants to this proceeding were signatories to the
PHE/Lurgi agreement is undisputed.  Nonetheless,
Torster and GEA contend that the clause encompassed the controversy before us
because the dispute related to the construction of the Hereford ethanol
plant.  

            Authorities and Their Application

            Whether the trial court erred in
refusing to order Panda, Torster, and GEA to arbitration per the Federal
Arbitration Act depends on whether it abused its discretion.  Sidley,
Austin, Brown, & Wood, L.L.P. v. J.A. Green Dev. Corp., 327 S.W.3d
859, 863 (Tex. App.Dallas 2010, no pet.) (stating that we have not addressed the standard of review applicable to
such appeals [under the Federal Arbitration Act]. However, on appeals of orders
denying arbitration under the Texas Arbitration Act (TAA), we apply a
no-evidence standard to the trial court's factual determinations and a de novo
standard to legal determination . . . .  This
standard is the same as the abuse of discretion standard of review and we will
apply that standard of review to interlocutory appeals under section 51.016).  Moreover, a trial court abuses its
discretion when its decision deviates from guiding rules and principles and is
otherwise arbitrary, capricious and unreasonable.  See Downer v. Aquamarine Operators, Inc., 701 S.W.2d
238, 241-42 (Tex. 1985).    

            In a
nutshell, we are being asked to decide if it was wrong to forego the arbitration of claims and
causes of action arising from conduct occurring prior to the execution and independent of the PHE/Lurgi
contract and between parties who never signed that document.  Those circumstances liken to the situation
described in the very recent opinion of the Fifth Court of Appeals in Weaver & Tidwell, LLP. v. The Guar. Co. of N. Am. USA, No. 05-10-0557-CV, 2011 Tex. App. Lexis
1285 (Tex. App.Dallas, February 23, 2011, no pet. h.).  There, the trial court also refused to order
the parties to arbitration.   Weaver and
Tidwell thought that was error because they had executed various contracts with
another company, J&V, to perform audits of J&V, and those agreements
contained arbitration clauses.  The
audits were required by the Texas Department of Transportation as a condition
of contracting with the department to install lighting and signal systems.  Also required by the department were
performance bonds which bonds were provided by The Guarantee Co.  And, in deciding to provide those bonds, The
Guarantee Co. reviewed and relied upon the audits of J&V completed by
Weaver & Tidwell.  Needless to say,
J&V defaulted on its agreements with the department, which defaults
triggered The Guarantee Co.s duty to perform.    Thereafter, J&V sued Weaver &
Tidwell, alleging various causes of action sounding in fraud, breached
fiduciary duty, and negligence.  That
suit was sent to arbitration per the contracts between the two entities.  In a separate proceeding, The Guarantee Co.
sued Weaver & Tidwell for negligently performing the audits it relied on
and for providing false information about J&V in those audits.  Though Weaver & Tidwell asked the trial
court to also forward the Guarantee Co. suit to arbitration, the court did
not.  That decision was upheld on appeal.

            In ruling as it
did, the reviewing court in Weaver & Tidwell considered the nature
of the cause of action being pursued, whether The Guarantee Co. was attempting
to enforce rights arising or acquire a benefit under the Weaver/J&V
auditing contract (as a subrogee or third-party beneficiary), and whether The
Guarantee Co. was a signatory to the Weaver/J&V auditing agreements.  Because The Guarantee Co. did not sign the
auditing agreements, was not seeking to obtain a benefit arising from those
agreements as either a subrogee or third-party beneficiary, and was pursuing a
tort claim as opposed to one for breach of the Weaver/J&V contracts, it was
not bound by the arbitration clauses at issue, according to the court.  Id.
at *4-6.  The same is no less true here.

            Panda Energy
did not sign the PHE/Lurgi contract (i.e. the accord containing
the arbitration clause).  Nor is it
pursuing (as a subrogee, third-party beneficiary, or in any other capacity) any
entitlement or right arising from the contract or even prosecuting a cause of
action sounding in breached contract. 
Rather, the events underlying its claim arose prior to the execution of
the PHE/Lurgi document and involved purported misrepresentations uttered and
deceptions planned by Torster and GEA independent of that agreement.  To hold under those circumstances that the
independent tort claim urged by Panda Energy is somehow encompassed by an
arbitration clause in an agreement none of the parties at bar signed would be
to ignore the well-reasoned opinion and ruling of the Fifth Court in Weaver & Tidwell and the authorities cited therein.  That
we opt not to do.  Accordingly, we 1)
conclude that the trial court did not abuse its discretion by refusing to
direct the litigants to arbitration, 2) overrule all issues of Torster and GEA,
and 3) affirm the trial courts order.

 

                                                                                    Brian
Quinn

                                                                                    Chief
Justice

            











[1]The
clause read as follows:  . . . any
Dispute shall be settled exclusively and finally by binding arbitration . . .
.  Moreover, the term dispute was
defined as any dispute, controversy or claim between the Parties [to the
contract] arising out of or relating to this Agreement, or the breach,
termination or invalidity thereof . . . .