**CAIN et al. v. TRUEHEART.   (No. 8142.)** *

Court of Civil Appeals of Texas.   San Antonio.
Oct. 31, 1928.

On Rehearing Nov. 28, 1928.   Appellee's Motion for Rehearing Overruled Dec. 22, 1928.

---

*Writ of error dismissed.

Ingrum, Smith & Gulley and J. Ed. Wilkins, all of San Antonio, for appellants.

Terrell, Davis, Huff & McMillan, of San Antonio, for appellee.

FLY, C. J. Appellee sought and obtained a temporary injunction against Grover C. Cain, Carl Adolph, and Len Alderson, restraining them from operating a dance hall or from operating the same under the name of "an academy of dancing, or from using said premises for public dancing by whatever name it may be called"; also restraining the owner from "leasing or demising or delivering possession thereof to any person or persons, firm or corporation for the purpose of making such use thereof." The court temporarily restrained the appellants from using the premises for public dances or an academy of dancing, but permitted "the conduct of a strictly dancing class in the day time only, and accompanied by a piano or victrola only." From that order, this appeal has been perfected.

This case in its material features was twice decided on appeal to this court, once in 1922 and again in 1923. The case at those times' being prosecuted against a tenant alone, while in this case the suit is against Grover C. Cain, the owner of the premises, and his two tenants, Adolph and Alderson. The decisions on the former appeals are reported as Parker v. Trueheart (Tex. Civ. App.) 246 S. W. 428, and Id. (Tex. Civ. App.) 257 S. W. 640. The first appeal was one from a judgment granting a temporary injunction, and it was affirmed; the second was from a judgment refusing a permanent injunction, and it was reversed, and judgment rendered for Trueheart. The home of appellee in this case is the same that it was in the two previous appeals, and the dance hall is the same. However, on this appeal there is proof of the use of the hall during the day for the purpose of teaching dancing, while the use on the former appeals was for wild and boisterous night dancing. It is not claimed on this appeal that there was an improper use of the hall during the day, but after the hour when appellee sought his couch for sleep and rest, which seemed to be about 10 o'clock at night.

The evidence for appellee is not so strong or convincing as on the last appeal, but, while unsatisfactory, there was evidence, from which the trial judge could have educed his conclusions of fact, and the conclusion of law that the operation of the Texas Dancing Academy after the time for appellee to seek sleep and rest, in the north room of his house, was disturbing to him. Appellee seems to have spent the early hours of the night on his gallery, listening to the music in the far north end of the building belonging to appellant Cain, and watching the electric lights as they shot their beams across Josephine street. Appellee seemed to have been entranced with the music and the shifting scenes across the street until about 10 o'clock, when he desired to sleep. The applauding of the dancers seemed to disturb him more than the music or the pattering feet of dancers, and this applause and sometimes singing seemed to gain fresh impetus about 10 o'clock, or thereafter, when appellee sought his couch and tried to woo the drowsy god of sleep. Then, and not till then, the trouble began. Before the hour of retiring appellee sat on his gallery as near the dance hall as he could get, without crossing over to it or going into the street. The music must have been entrancing on that north gallery, to entice not only appellee, but his brother John, to sit nightly on the north gallery in the summer time, when it was necessarily very warm, until 10 o'clock. He testified that there was a "little applauding" and occasionally a song. It took John over three weeks to ascertain whether the music and dancing was a nuisance. The evidence indicated that there were no residences on the north side of Josephine street, and even on the south side there were as many business places as residences; and until 10 o'clock at night the passage of automobiles was as great as at almost any point in San Antonio, for Josephine street is a great feeder for traffic from West End, Beacon Hill, Laurel Heights, and Tobin Hill, to that great traffic artery, Broadway. Appellee admitted that the music came from the extreme upstairs north end of Cain's building, which was 200 feet or more from appellee's gallery on the north side of his house. He gave no reason for seeking this warm spot for rest and recreation, nor for his sleeping in the north room, as near as possible to the music and dancing across the way.

The trial court concluded that he was disturbed, but, according to his own testimony, the disturbance must have arisen after 10 o'clock at night, after the automobiles had decreased in number and when appellee desired to sleep. He could not have been disturbed up to that hour, for he sought a seat on his portico where he and his brother could obtain full benefit of the music, 200 feet away, and see the figures flitting in the mazes of voluptuous modern dances.

It is evident that the court did not think that the dancing disturbed appellee during the day, because it was not prohibited, although the judgment sought to prescribe piano music, poorly fitted for dancing, and the "canned" music of a victrola, an instru-

ment which, when adjusted for loud tones, can be heard for blocks, and is not considered a choice instrument for dancing. Appellee made no complaint of the music during the day, and no action as to the volume or kind of music should have been directed in the judgment.

There are facts which tend to sustain the judgment of the court so far as it prohibited the music and dancing in the late hours of the evening, and while we deem them weak and meager, as developed on this trial, still we do not feel disposed to wholly set aside the temporary injunction granted by the court, until the case is fully developed on its merits before a jury, if so desired.

The judgment granting the temporary writ of injunction will be reformed so as to permit appellants to conduct their music and dancing during the day and until 10 o'clock at night, and also permit the use of any of the musical instruments usually used for dancing purposes, and as reformed the judgment will be affirmed.

### On Motion for Rehearing.

■ It is, as contended by appellants, the well-established rule that an injunction restraining the use of property should be issued with the greatest caution, sustained by clear and satisfactory evidence, not only that the applicant will sustain damages, but such damages as he could not recover in a court of law. As said by this court in the case of Iford v. Nickel, 1 S.W.(2d) 751: "The sacred right of the use and enjoyment of property cannot be taken or destroyed in a court of equity without pleadings so plain and clear as to be beyond criticism or dispute, followed by unimpeachable testimony." As said by Chief Justice Phillips in Spann v. City of Dallas, 111 Tex. 350, 235 S. W. 513, 19 A. L. R. 1387: "The substantial value of property lies in its use. If the right of use be denied, the value of the property is annihilated and ownership is rendered a barren right."

■ A place for music and dancing is not a nuisance per se, and can become such only in the manner in which it is used. It is not alleged nor proved that the hall is frequented by disorderly characters, drunken men, or dissolute women, nor that liquor is furnished or sold to those who attend the dances, the gravamen of appellants' offense being that they keep their dancing place open until between 11 and 12 o'clock, and disturb the slumbers of appellee, his wife, two sons, and a married daughter. He alleges that an orchestra consisting of a piano, violin, drum, and saxophone or other wind instrument makes such noises as disturb appellee, and that the dancers talk loud and clap their hands and park their cars in front of his house and make noises when they leave. He claims a residence west of him, that is rented, and one east in which his daughter and son-in-law live. Appellee alleged that the lights from the dance hall shine into his house and disturb him.

Appellee and Hair are the only witnesses on Josephine street, where they live on the south side, the dance hall being on the north side, who swear to being disturbed by the dance hall. It was shown without contradiction that strings of electric lights were hung along in front of two drink stands on either side of the dance hall, but they did not seem to disturb appellee or his son-in-law, Hair, but the lights on the second floor of the dance hall were very disturbing, for some reason not explained by them. Appellee and his son-in-law were on the ground floor of their residences on the same level with the lights on the street. The disturbance took place in the summer time when most people resort to the south side of their houses, but appellee and his son-in-law, as well as his brother, who came over night after night for three weeks, to qualify as a witness, stationed themselves on the north side where the lights could shine in their eyes, and the music and the dancing be heard. Josephine street is a noisy thoroughfare, forming the main artery by which the residents of the north and northwest portions of the city reach Broadway, a much traveled highway. The two sons, the daughter, and the wife did not testify, although it was alleged that they were greatly disturbed. None of the noises of the street, nor the noises connected with appellee's oil and gas station, disturbed appellee or son-in-law, nor did a phonograph in a not far distant place. Only appellant's lights and music jarred upon their nerves. All the witnesses as to any disturbance by the music were nervous and unhealthy, abnormally so, except the son-in-law, who had a wife in a delicate condition, and John Trueheart, who, as the music and the bright lights did not go to him, went to them. A man who was given the price of admission to the dance hall by appellee, and went there and danced on one occasion, said the music was not loud, and that he never heard the music outside. He also stated that he had been in appellee's house while the dance was on, but could not see any dancing in the hall. It was shown that the music was upstairs at the extreme rear of the hall.

Appellee had a number of rooms in his house, and yet he occupied the northwest corner room, the hottest in any house in this part of Texas, as every one who resides here well knows. It was also the nearest to the music and the bright lights which disturbed him so much.

■ Another investigation of the facts convinces this court that not only is the testimony weak and unsatisfactory, but that it is altogether insufficient to sustain a writ of injunction destroying the use of the dance hall as it was used. Appellee has added to his disturbed feelings by seeking places

where he knew he would be most disturbed and in a house where his two sons and wife were presumably not disturbed, because they did not so testify. He alone, of all the property owners on Josephine street and vicinity, swore that the music and the lights created a nuisance. We do not believe that the use of valuable property should be destroyed on account of one nervous man, who subjected himself to all the discomforts arising from a heavily used street, and sought to create evidence by having his brother with him and by paying the way of a witness into the dance hall.

The former judgment of this court is set aside, and judgment is here rendered reversing the judgment of the lower court and dissolving the injunction granted by such court.