W. G. ROGERS ET AL. V. DANIEL OIL & ROYALTY COMPANY.

No. 7306.   Decided December 8, 1937.
(110 S. W., 2d Series, 891.)

*William McCraw*, Attorney General, and *Pat M. Neff, Jr.*, Assistant Attorney General, for plaintiffs in error.

It was error for the trial court, and the Court of Civil Appeals in affirming said judgment, to issue a temporary injunction restraining the State officers from seizing and selling the trucks of crude petroleum hauled by the said oil company, and from selling same for State taxes, and from in any manner inter-

fering with them in the operation and management of their business. Clymore Production Co. v. Thompson, 13 Fed. Supp. 469; Art. 7065a, Sec. 1 a, c, d, Sec. 2j, Sec. 2a-b, Sec. 12c.

*H. L. Williford,* of Fairfield, *R. W. Williford,* of Wortham, and *Cotten & Johnston,* of Palestine, for defendant in error.

The trial court had the right to issue the temporary injunction, and plaintiff was entitled to same, it affirmatively appearing that plaintiff had no adequate legal remedy, and that it would suffer irreparable injury unless its rights were protected by the temporary injunction. Hopkins v. Southern Calif. Tel. Co., 275 U. S. 393, 72 L. Ed. 329; Procter & Gamble Distributing Co. v. Sherman, 2 Fed. (2d) 165; Clark v. Eagle, 89 S. W. (2d) 795.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This is purely an injunction proceeding. Daniel Oil & Royalty Company, a corporation, brought this suit in the district court of Anderson County, Texas, against W. G. Rogers, sheriff of such county, George H. Sheppard, State Comptroller, and F. A. Bethea, the Comptroller's agent, to enjoin them, and each of them, from doing certain acts in an attempt to collect taxes claimed by such officers to be due on certain oil produced, owned, transported, and sold by the oil and royalty company. The district court issued a temporary injunction against the above named officers, and each of them, restraining them, and each of them, from making any effort to collect the taxes in controversy, pending final trial of this cause. On appeal this judgment was affirmed by the Court of Civil Appeals. 105 S. W. (2d) 476. The case is before this Court on writ of error granted on application of the above named officers.

The pleadings and the evidence of the parties are rather long, and in the interest of brevity we shall not here attempt an extended statement thereof. We treat the pleadings of all parties as sufficient to raise the questions of law we shall discuss and decide. Simply stated, the oil and royalty company contends by its pleadings and evidence that the oil in question is crude oil and subject to a production tax only. On the other hand, Rogers et al. contend by their pleadings and evidence that such oil is "motor fuel" as defined by Section 1(a), Acts of the 44th Legislature, Ch. 240, p. 558, 1935 (Article 7065a-1, Vernon's Texas Statutes, 1936), and that it is therefore subject to an "occupation or excise tax" of four cents on each gallon, or fractional part thereof, as provided by Section 2(a) of the above

mentioned Act (Article 7065a-2, Vernon's Texas Statutes, 1936). The last named section imposes an excise or occupation tax of four cents per gallon, or fractional part thereof, on all "motor fuel." The thing embraced within the term "motor fuel" is, as already stated, defined by Section 1(a) of the above Act. The statute, Section 2(a), supra, provides that the four cents tax "shall accrue and be paid as hereinafter provided upon the first sale in Texas." As we interpret the record, there is no question about the fact that the oil and royalty company was the first seller within the meaning of the statute last above mentioned. The only issue raised by the evidence and pleadings is whether or not the oil in question is *crude oil* or *motor fuel*. If it is crude oil, pertinent statutory tax laws have not been violated. On the other hand, if such oil is "motor fuel," the lawful tax imposed thereon has not been paid, and pertinent statutory tax laws pertaining thereto have been violated. Also, as already shown, the question as to whether this oil is *motor fuel* or *crude oil* became an issue of fact before the trial court. The Court of Civil Appeals, in effect, has determined that the evidence presents a fact issue on that question. Further, we interpret the Court of Civil Appeals decision to hold that the judgment of the trial court determines that fact issue in favor of the oil and royalty company.

The pleadings and evidence of the oil and royalty company further show that it is engaged in the permanent and regular business of producing and selling the oil involved in this suit. In this connection, it is shown that this oil was produced from two oil wells in Freestone County, Texas; that the oil coming from such wells is heavily impregnated and charged with natural gas; that a separator has been installed at such wells; that such separator separates the natural gas from the crude oil; that the gas, as separated, is sold as such to a gas company; that the crude oil is saved and stored and sold as crude oil under a contract to that effect; that at the time this injunction was sought this crude oil was being sold at $1.08 per barrel of 42 gallons, plus 22 cents per barrel for transportation by truck; that there was no pipe line available at the time, and that the motor fuel tax demanded by the above named State officers would amount to $1.68 per barrel, or sixty cents per barrel more than the oil and royalty company was actually getting for the oil in question here. In this connection, the evidence offered on behalf of the oil and royalty company very strongly tends to show that this oil was not used, and is not usable for motor fuel. In fact, we are of the opinion that the evidence conclusively shows that it was not used as motor fuel. It may be said that the question

as to whether or not it is usable as a motor fuel presents a fact issue.

With the record in the condition above described, Rogers et al., by proper pleadings, filed in due order, contended in·the trial court that the oil and royalty company was not entitled to equitable relief by injunction in this cause, because under the pertinent provisions of Chapter 214, Acts 43d Legislature, p. 637, 1933 (Article 7057b, Vernon's Texas Statutes, 1936), commonly known as the "Suspense Statute," it had a full and complete remedy at law in the district court of Travis County, Texas. This contention was overruled by the trial court, and such ruling was sustained by the Court of Civil Appeals. The ruling of the Court of Civil Appeals is assigned as error in this Court by Rogers et al. The statute above referred to is rather lengthy, and for that reason will not be reproduced here.. As germane to this controversy it, in effect, provides:

1. Any person, firm, or corporation who may be required to pay to the head of any department of the State Government any occupation, gross receipt, franchise, license, or other privilege tax or fee, and who believes or contends that same is unlawful and not legally collectible, shall, nevertheless, be required to pay such tax or fee as such public officer shall deem due the State, but shall be entitled to accompany such payment with a written protest setting forth each and every ground or reason why it is contended that such demand is unlawful or unauthorized.

2. The person, firm, or corporation paying taxes or fees under this Act is given ninety days from the date of payment to file suit for their recovery in any court of competent jurisdiction in Travis County, Texas, and such suit can be filed in no other county. The officials charged with the duty of collecting such taxes or fees and the State Treasurer and the Attorney General must all be made parties to the suit. No grounds of recovery can be urged in such suit that have not been set out in the written protest originally filed by the protesting taxpayer.

3. The official collecting the protested taxes or fees is required to transmit them daily to the State Treasurer with a detailed list of those paying the same, and such collecting officer must, at the time he transmits such fees, inform the Treasurer that such money has been paid under protest. The Comptroller is required to issue a deposit receipt for the daily total of the protested tax or fee remittances from each department; and the Treasury Department is required to keep a cash book in which shall be entered all such deposit receipts. When the Treasurer receives such tax or fee moneys he must not place the same in

the State Treasury, but must deposit them in the State depositories in the same manner as other funds, and they shall draw the same rate of interest. The interest earned on these suspense fund deposits must be allocated thereto until the status thereof is finally determined. Also, this interest does not go into the Treasury if the fund earning the same does not. In other words, the suspense funds, as well as the interest thereon, remain out of the Treasury until it is determined whether or not the money has been legally demanded and collected.

4. If the suit above mentioned is not brought within the time and manner provided by the statute under discussion, or in the event such suit is brought and it is therein finally determined that the money paid under protest, or any portion thereof, together with the pro rata interest earned thereon, belongs to the State, then it is the duty of the Treasurer to transfer the same from the suspense account to the State Treasury, to be allocated to the proper fund. In the event the suit is brought within the time and manner provided, and it is finally adjudged that such money, or any part thereof, so paid by a protesting taxpayer was unlawfully demanded, and that same belongs to such taxpayer, it is the absolute duty of the Treasurer to refund the amount unlawfully demanded, together with the pro rata interest earned thereon, to the taxpayer by the issuance of a refund warrant. The statute fully defines how these warrants shall be issued and charged, and fully protects the person entitled to receive the same.

The act under discussion contains other provisions which to our minds are not germane to this suit, and they will therefore not be stated or discussed.

A reading of the Motor Fuel Tax Law discloses that it requires every distributor making the first sale of motor fuel to pay a tax of four cents per gallon, or fractional part thereof, and such tax is due and payable at the office of the State Comptroller at Austin, Texas, on the 20th day of each month, the same being based on sales or use made during the preceding calendar month. Article 7065a-2, supra.

■ We now come to consider whether the above suspense statute affords the oil and royalty company a complete and adequate remedy at law. If it does, the equitable remedy of injunction will not lie. In order to say that the suspense statute affords a complete and adequate remedy at law in this case we must say: first, that the law is valid and constitutional; and, second, that its provisions afford the oil and royalty company a complete and adequate remedy in this particular case.

We assume that, absent the suspense statute, the oil and royalty company would have the right in this case to resort to a court of equity for injunctive relief, if, in fact, the oil here involved is not motor fuel, and therefore not subject to the four cents per gallon motor fuel tax. This must be true, because of the drastic provisions of the Motor Fuel Tax Law and the irreparable damages and injuries this company would suffer under its terms if it is unlawfully subjected to its provisions.

■■ If we understand the brief and argument of the oil and royalty company, it contends that the suspense statute can not defeat its right to equitable relief because it does not lie within the power of the Legislature to take away the constitutional equity jurisdiction of our district courts. The rule that equitable relief will not be awarded by our courts where there is a complete and adequate remedy at law is too well imbedded in our judicial system to admit of dispute. It is true that under our system law and equity are so blended as to remove all distinctions, procedural or otherwise, as between courts of law and courts of equity. It is a rule in this State that actions may be instituted in our courts and prosecuted to final judgment without regard as to whether they are proceedings in equity or at law. In spite of this blended system of law and equity the distinction between them is as absolute as ever, and to entitle the plaintiff to equitable relief he must show a proper case for a court of equity to exercise its equitable jurisdiction. 1 Tex. Jur., pp. 612, 613, and notes. In cases where an adequate and complete remedy at law is provided our courts, though clothed with equitable jurisdiction, will not grant equitable relief. Halcomb v. Kelly, 57 Texas 618; 1 Tex. Jur. 616. A pure suit for injunction is classed as an action for equitable relief. 1 Tex. Jur. 616, supra. The contention that the Legislature can not substitute a lawful for an equitable remedy is therefore overruled.

The oil and royalty company contends that it ought not to be compelled to resort to the legal remedy provided by the suspense statute, because such statute is itself invalid. In this regard, it is contended that the suspense statute fails to afford a complete and adequate remedy to recover the principal of the money paid under protest, and further fails to provide compensatory interest on the money paid under protest while it is so held.

■ When we come to consider the suspense statute, we find that it certainly completely and adequately affords the protesting taxpayer a complete and adequate remedy at law for the principal amount of the tax paid under protest. Under such statute,

when the money paid is accompanied by the statutory protest of the person paying, the official receiving the same must transmit it to the State Treasurer. In such instances the Treasurer does not place the money in the State Treasury, as such, but places it in suspense. If a suit is filed in a proper court in Travis County within ninety days from date of payment, the money remains in suspense until the suit is finished, and then the money is completely subject to the court's judgment. Under the statute, since the money does not go into the Treasury, as such, no additional legislative enactment is necessary to enable the Treasurer to do with it as directed by the statute or the court. We think such a statute is complete and adequate to protect the protesting taxpayer as to the principal amount paid. It is true that the protesting taxpayer must obey or perform the various procedural provisions of the suspense statute as to time and otherwise, but we are unable to see how this fact can be held to constitute it incomplete or inadequate. The protesting taxpayer must accompany the payment with a written protest setting forth each and every ground why he contends he should not be required to pay; he must file suit in Travis County within ninety days from the date of payment; he must make certain officers parties to such suit; and he can urge no grounds of recovery therein that were not set forth in his written protest. Certainly none of these provisions are unreasonable, and none of them can be held to render the remedy incomplete or inadequate.

As to the question of interest, a reading of the statute will disclose that it does not provide interest at any fixed rate. It simply, in effect, provides for the placing of the money paid under protest in suspense in the State depositories in the same manner as other State funds, and such money draws the same rate of interest. The interest earned on the money paid under protest must be allocated thereto, and the original amount paid, together with the interest earned thereon, is returned to the taxpayer in the event it is adjudged that such money was wrongfully demanded. In this regard, it is also provided that in the event it is decided that any part of the money paid was wrongfully demanded that part must be returned to the taxpayer, together with the pro rata part of the interest earned thereon. To our minds such a statute ought to be held complete and adequate as regards interest on the money while in suspense. State Life Ins. Co. v. Daniel, 6 Fed. Supp. 1015. It is true, as already shown, that this statute does not provide for interest at a fixed rate,—neither does it provide for interest at its value at the particular time to the taxpayer. In spite of this, when

we consider that this statute, as regards interest, is absolutely equal to the taxpayer and to the State, giving the State only the intertest earned if it is decided that the taxpayer was wrong in paying under protest, and giving the taxpayer the same interest if it is decided that the money was rightfully so paid, and when we further consider the subject matter of the legislation, the aims sought to be accomplished in having a convenient and fair remedy for the litigation and adjustment of tax differences between the State and its taxpayers, we think this act ought to be held complete and adequate as regards interest on the money while held in suspense. In so holding we do not decide that it is necessary to provide interest to the taxpayer in order to render the law valid, or complete and adequate. We express no opinion on that question. We simply hold that under all of the provisions of this statute, if it is necessary to provide interest to render the statute complete and adequate, the interest provided is sufficient to do so.

■ If we properly interpret its opinion the Court of Civil Appeals holds that because this protest statute is a "new comer" to our jurisprudence and has not heretofore been construed and applied by this Court, it should not be held that such statute can be successfully pleaded as a bar to equitable relief in this cause. In support of this holding the opinion of the Court of Civil Appeals cites the opinion of the Supreme Court of the United States in Atlantic Coast Line Ry. Co. v. Daughton, 262 U. S. 413, 43 Sup. Ct. 620, 67 Law Ed. 1051. We do not think that that case is in point here. In the Atlantic case, supra, it was simply held that in a cause pending in a Federal court a State statute would not be applied so as to bar equitable relief in the absence of any construction and application of such statute by the court of last resort of the enacting State. There is a reason for this holding as applied to Federal courts. If a statute is open to construction they are bound by the construction placed thereon by the highest State court of the enacting State. They can not know what such construction will be until it is delivered. Manifestly this rule would not apply where the courts of the enacting State are called on to construe such law even for the first time.

■ From all that has been said it is evident that we hold that our suspense statute is in all respects a valid act. It must follow that it applies so as to defeat the awarding to the oil and royalty company of the equitable relief of injunction in this case if it affords such company a complete and adequate remedy. In this connection, however, it is not enough that a remedy at law is

provided, but such remedy must be complete and adequate. We now come to consider and decide whether the suspense statute, regarded as in all respects valid, affords the oil and royalty company a remedy, complete and adequate, in this particular case.

As already shown, the undisputed facts of this case disclose that the oil and royalty company is engaged in the business of producing and selling this oil,—that is, of producing and selling the oil from these two wells, with the gas removed therefrom. In order to avail itself of the suspense statute this company would have to pay the four cents per gallon motor fuel tax every month. In this regard, it is shown that these officers stand ready to enforce the drastic provisions of the Motor Fuel Tax Law according to all of its terms if the oil and royalty company fails to do this. In order to avoid such penalties and obtain the benefit of the suspense statute this company would have to pay these taxes under protest every month, and then file suit in Travis County within ninety days after each of such payments. It would follow that the company would probably have to file a number of suits involving the same, or substantially the same, subject matter in order to protect its rights. In fact, if the litigation should be drawn out any great length of time a great number of such suits would result. This case itself was filed in December, 1936, and as it is here on temporary injunction only we presume the main case is still untried. It·is certainly the rule in this State that equity will take cognizance of a controversy to determine the rights of all the parties, and grant the relief required to meet the ends of justice in order to prevent a multiplicity of suits. 17 Tex. Jur., p. 15, and authorities there cited; Gulf, C. & S. F. R. Co. v. Pearlstone Mill & Elev. Co., (Comm. of App.) 53 S. W. (2d) 1001. If equity jurisdiction can interfere to prevent a multiplicity of suits, the condition of this record presents such facts or conditions as to call for the exercise thereof. It would be a paradox to say that equity jurisdiction can be exercised to prevent a multiplicity of suits and at the same time say that a legal remedy is complete and adequate, although it leads to such multiplicity. To our minds, if a remedy at law, though otherwise complete and adequate, leads to a multiplicity of suits, that very fact prevents it from being complete and adequate.

Because this record shows that to force the oil and royalty company to resort to the remedy at law afforded it by the suspense statute would in all probability compel it to file a multiplicity of suits, and for that reason alone, we affirm the judgments of the two lower courts.

Opinion delivered December 8, 1937.