AMERICAN HOUSING RESOURCES, INC. et al., and Robert S. Coit, Appellants,

v.

Elbert R. SLAUGHTER, Jr., and Richard E. Slaughter, Appellees.

No. 20131.

Court of Civil Appeals of Texas, Dallas.

Feb. 13, 1980.

Rehearing Denied March 11, 1980.

**14**

Frank G. Newman, Ronald E. Holub, Newman, Shook & Newman, Philip I. Palmer, Jr., Palmer, Palmer, Coffee & Bush, Christopher M. Weil, Dallas, for appellants.

Michael P. Carnes, Charles L. Evans, Johnson, Bromberg, Leeds & Riggs, Dallas, for appellees.

Before GUITTARD, C. J., and ROBERTSON and HUMPHREYS, JJ.

ROBERTSON, Justice.

This is an appeal from a judgment directing specific performance of two agreements to place funds in an escrow account. As an inducement for the contributions of appellees Elbert R. Slaughter, Jr. and Richard E. Slaughter to the capital of two limited partnerships, appellants American Housing Resources, Inc., American Multi-Family Housing Company, Inc., American Community Corporation, and Robert S. Coit entered into agreements with the Slaughters to indemnify the Slaughters, upon certain conditions, if their tax deductions for the year 1972 resulting from their contributions were not at least $152,832.00. In 1976 the conditions triggering the indemnity agreement occurred, but the indemnitors failed to fully comply with the agreement's provisions. The Slaughters subsequently filed this action, and the trial court entered judgment ordering specific performance of the agreement by the indemnitors. We reverse the trial court's judgment, because the Slaughters have failed to establish that their remedy at law is inadequate, and dismiss the case.

The pertinent provisions of the indemnity agreements are as follows: [1]

2.b. In the event of the receipt by either of the Slaughters or by the Partnership of any determination by the Internal Revenue Service as stated in paragraph 1. hereinabove (for this purpose "determination" shall mean any written proposal by a representative of the Internal Revenue Service, including a proposal or determination by the District Director of Internal Revenue, or his agent, whether or not protested by the Slaughters), the Slaughters, or either of them, may at their election give any one or more of the Indemnitors written notice at any time within sixty (60) days from said receipt thereof. Thereupon, unless the provisions of subparagraph 2.c. below shall become applicable, the Indemnitors shall promptly purchase from the Slaughters their entire interest in the Partnership and in Keller Plaza, Ltd., for cash in the amount contributed by each of them to the capital of the Partnership and to the capital of said Keller Plaza, Ltd. (net of any cash distributions theretofore received by them from said partnership), less the amount of any net reduction in the Federal income tax liability of each of the Slaughters (and their respective wives) for 1972 and all subsequent years (including the year of said purchase by the Indemnitors) by reason of their having been limited partners thereof and taking into account the

---

1. The two agreements are substantially identical in all respects relevant to this appeal.

income tax consequences to the Slaughters of said purchase by the Indemnitors. 2.c. Notwithstanding any other provision in paragraphs 1. and 2. above, in the event any determination of the type described hereinabove is made by the Internal Revenue Service with respect to either of the Slaughters, for the calendar year 1972 and the Slaughters, or either of them, gives any one or more of the Indemnitors timely written notice thereof as provided in subparagraph 2.b. above, then instead of the Indemnitors being required promptly to purchase the Slaughters' entire interest in the Partnership and in Keller Plaza, Ltd., the Indemnitors may jointly give written notice to the Slaughters within thirty (30) days of the Indemnitors' desire to contest such determination, in which case the following provisions shall apply:

(i) The Indemnitors shall undertake at their sole expense any and all actions which may be appropriate in such contest up to but not beyond the point of a final court judgment passing upon such determination.

(ii) The Slaughters shall not be required to take any action in such contest other than to cooperate in the formalities incident to any proceeding being conducted in their names, although, if the Slaughters, or either of them, are contesting any other issue affecting their Federal income tax liability for 1972, they shall have the right to participate jointly in such proceeding at their expense with respect to such other issue.

(iii) At the time of the Indemnitors' giving notice to the Slaughters of the Indemnitors' election to contest such determination, the Indemnitors shall place in escrow with a national bank having principal office in Dallas, Texas, cash funds in the amount which would be payable to the Slaughters if the Slaughters' interest in the Partnership and in Keller Plaza, Ltd., were purchased under subparagraph 2.b. above and subject to an escrow agreement whereby the escrowed funds (together with any interest accruing thereon during the escrow) shall be payable to the Slaughters (in satisfaction of the Indemnitors' indemnity obligation set forth hereinabove) upon (a) the rendition of any adverse final court judgment in the Indemnitors' contest of such determination or (b) the Indemnitors' earlier abandonment of such contest, but with said escrowed funds to be returnable to the Indemnitors in the event of and upon any successful contest of such determination to a final court judgment (all costs incident to the establishment and maintenance of such escrow to be for the sole account of the Indemnitors).

A fundamental rule of equity is that a court will not grant specific performance unless it is shown that no adequate remedy exists at law. *Lone Star Salt Co. v. Texas Short Line Railway*, 99 Tex. 434, 443–44, 90 S.W. 863, 865–66 (1906); 11 S. Williston, The Law of Contracts § 1418, at 651 (3d ed. W. Jaeger 1968). Where the remedy at law is adequate, equity has no jurisdiction to decree specific performance. Whether the legal remedy is adequate is a determination that must be made by examining the facts and circumstances of each case. While it has been stated that to preclude a court from granting specific performance, the remedy at law must be as certain, prompt, and efficient to attain the ends of justice as the equitable remedy sought, Annot., 152 A.L.R. 4, 21–22 (1944), the initial burden of invoking the courts equity jurisdiction is on the party seeking it. *Rogers v. Daniel Oil & Royalty Co.*, 130 Tex. 386, 392, 110 S.W.2d 891, 894 (1937); 1 J. Pomeroy, Equity Jurisprudence § 345, at 775–76 (5th ed. S. Symons 1941). Thus, the comparative advantages of the equitable remedy must be shown to outweigh those of the legal remedy. Among the factors to be considered are whether long-continued supervision by the court will be required, whether complete relief can be rendered by the remedy sought, and whether if the remedy sought is granted it can be adequately enforced. *Lone Star Salt Co. v. Texas*

*Short Line Railway,* 99 Tex. 434, 90 S.W. 863 (1906); Restatement of Contracts § 371 (1932); 11 S. Williston, *supra,* at 651; *see United Coin Meter Co. v. Johnson-Campbell Lumber Co.,* 493 S.W.2d 882, 886–89 (Tex. Civ.App.—Fort Worth 1973, no writ).

■ Here the indemnitors' monetary liability will not ripen until the Slaughters' tax liability is finally determined. At that time a suit for damages would be appropriate if the guaranteed deductions are disallowed and the indemnitors refuse to indemnify the Slaughters. Such a determination would finally settle any liability under the indemnity agreement. The Slaughters have not contended on this appeal that they have been monetarily injured by the indemnitors' failure to comply with the escrow provision, nor have they shown that the indemnitors are insolvent, so that an escrow would be necessary to protect the collectibility of any future indemnity that may be required.

An order specifically requiring the indemnitors to place funds into an escrow account would not grant complete relief in this matter. It would leave unresolved the ultimate liability of the indemnitors and, in that respect, would provide no more adequate or prompt relief than if the Slaughters were relegated to a suit for damages upon a final determination of whether the guaranteed deductions will be allowed. Its only purpose would be to provide a ready means of enforcing an ultimate claim for damages. We know of no authority, and appellees have cited none, that would support use of the equitable remedy of specific performance for such a purpose.

The Slaughters argue that a suit for specific performance should not presently be denied merely because a sufficient legal remedy will be available in the future. This argument might be persuasive if specific performance at the present time could provide relief comparable to that which would result from the future legal remedy. We do not have that state of facts before us. The remedy sought by the Slaughters would invoke the energies of the court to interpret and construe the indemnity agree-

ment, and possibly to interpret, construe, and enforce its order and the escrow provision, all with only the possibility that at some future time the escrowed funds will be required to indemnify the Slaughters.

Furthermore, serious questions exist concerning whether a judgment of specific performance would be efficiently enforceable by contempt proceedings in view of our constitutional prohibition against imprisonment for debt. *See* Tex.Const. art. 1, § 18. The Slaughters argue that an order to place money in escrow is not a debt within the ambit of this constitutional prohibition. Consequently, they reason that such an order is one of "many instances in the proceedings of the courts where the performance of an act may be enforced by imprisonment . . ., although it might involve the payment of money." *Ex parte Davis,* 101 Tex. 607, 612, 111 S.W. 394, 396 (1908). The only "instances" our research has revealed in which an order for payment of money has been enforced by imprisonment concern failure to pay sums subject to criminal penalties or failure to comply with certain orders in domestic relations actions. *Id.* at 612, 111 S.W. at 395–96; *Ex parte Morris,* 171 Tex.Cr.R. 499, 352 S.W.2d 125, 128 (1961); *see, e. g., Ex parte Gorena,* 575 S.W.2d 841 (1979) (property division); *Ex parte Birkhead,* 127 Tex. 556, 95 S.W.2d 953 (1936) (child support); *Thompson v. State,* 557 S.W.2d 521 (Tex.Cr.App.1977) (restitution as condition of probation); *South v. State,* 72 Tex.Cr.R. 381, 162 S.W. 510 (1913) (occupation tax). We need not decide whether enforcement of the desired order by contempt would come within this prohibition because sufficient other factors exist indicating that a suit for damages, upon final determination of the Slaughters' tax liability, will more certainly, promptly, and efficiently attain the ends of justice than will the presently sought judgment for specific performance.

Finally, the Slaughters argue that attempting to equate this specific enforcement with a future damage award is to confuse the present obligation to fund an escrowed account with a future obligation

to pay such funds should the tax litigation prove unsuccessful in restoring the guaranteed deductions. While we recognize that this argument may have some validity, we do not find it sufficiently compelling to counteract the considerations stated above.

We hold, therefore, that the trial court's equitable jurisdiction was not properly invoked, because the inadequacy of the Slaughters' legal remedy was not established. Accordingly, we reverse the judgment of the trial court and dismiss the case.