GENERAL MOTORS ACCEPTANCE CORPORATION, Appellant,

v.

Don BYRD, Sheriff of Dallas County, Texas; Bill Long, District Clerk of Dallas County, Texas; Stanley A. Bennett, a/k/a S.A. Bennett, Sr., and Tri-Continental Leasing Corp., Appellees.

No. 2–85–039–CV.

Court of Appeals of Texas, Fort Worth.

April 24, 1986.

Biggers, Beasley, Amerine & Earle, Arch A. Beasley and Rick W. Hightower, Dallas, for appellant.

Goldberg & Alexander, Jerrold M. Bell, Dallas, for appellees.

Before BURDOCK, HOPKINS and HUGHES (Retired, Sitting by Assignment), JJ.

## OPINION

BURDOCK, Justice.

General Motors Acceptance Corporation (GMAC) appeals from the denial of an injunction in the court below. GMAC sought, by injunction, to recover the $18,500.00 it paid to Sheriff Don Byrd at the Sheriff's execution sale of a 1979 motor home belonging to appellee-defendant Stanley Bennett. GMAC had a duly perfected first and prior lien on the motor home at the time of sale. Appellee-defendant Tri-Continental Leasing Corporation had previously obtained a personal judgment against Bennett in an unrelated suit, and the Sheriff sold the motor home at the execution sale to satisfy this judgment.

We affirm.

Trial was to the court, on solely the agreed written stipulations of the parties. The facts, as stipulated, were as follows:

On September 29, 1979, Bennett purchased a 1979 motor home from R.O. Evans Pontiac. The "cash price" of the motor home (according to the retail installment contract and security agreement) was $37,454.00. Bennett paid $3,000.00 cash and signed a promissory note for the balance at 12.91 percent interest. The seller retained a security interest in the motor home to secure the note. R.O. Evans Pontiac assigned the note and security interest to GMAC. GMAC duly perfected its first lien and security interest, as noted on the Texas Certificate of Title to the motor home.

On May 20, 1983, in Cause Number 83-13175-H, Tri-Continental obtained a personal judgment against Bennett in the amount of $7,677.98. Pursuant to a writ of execution on this judgment in favor of Tri-Continental, the Sheriff seized the motor home from Bennett, who had title and possession of the motor home subject to GMAC's lien.

On or about April 5, 1984, after the Sheriff levied on the motor home, GMAC accelerated the balance on Bennett's note and gave him five days to pay off the balance. Bennett failed to pay the balance, and all parties stipulated that Bennett had defaulted in his note and security agreement covering the motor home.

Sheriff Byrd offered the motor home for sale under execution and sent GMAC a Notice of Sheriff's Sale. At the Sheriff's Sale in the latter part of April, 1984, a number of bids were made on the vehicle. The next to last bid was $18,000.00, and GMAC made the final and highest bid in the amount of $18,500.00. GMAC paid the Sheriff $18,500.00 and obtained the motor home. All parties stipulated that the Sheriff's sale was properly held pursuant to the laws of the State of Texas and the Texas Rules of Civil Procedure.

At the time of the sale, Bennett owed a lawful matured balance to GMAC of $19,349.81. At the time of trial on the stipulated facts, GMAC had made no sale of the motor home under its security agreement.

GMAC sued for a temporary restraining order and permanent injunction. GMAC requested that the court initially restrain the Sheriff and the District Clerk, who now held the proceeds of sale, from disbursing the proceeds to Tri-Continental and Bennett. GMAC further alleged that it was entitled to the entire sale proceeds pursuant to TEX.BUS. & COM.CODE ANN. sec. 9.306(b) (Tex.UCC) (Vernon Supp.1986) (the Texas Uniform Commercial Code) and that the Sheriff and Clerk should, on final judgment, be enjoined to pay the proceeds over to GMAC. Claiming that the motor home was worth less than the indebtedness owed to GMAC, that Bennett lacked other non-

exempt property to satisfy the indebtedness, and that the proceeds of sale "could lose their status as identifiable cash proceeds and become free and clear of Plaintiff's lien and security interest" if disbursed to Tri-Continental and Bennett, GMAC maintained that it would suffer "immediate and irrevocable injury, loss or damage" if the money was not awarded to it. GMAC further asserted that it had no adequate remedy at law.

The court granted the temporary restraining order and extended the restraint, by agreement, until final judgment. Upon final hearing on the stipulated facts, the court denied the requested relief and ordered that the Clerk disburse the funds to Tri-Continental in accordance with the judgment in Cause Number 83–2497–H and that the Clerk disburse all remaining funds to Bennett.

A suit for injunction is an action for equitable relief. *Rogers v. Daniel Oil & Royalty Co.,* 130 Tex. 386, 110 S.W.2d 891, 894 (1937). In cases where an adequate and complete remedy is afforded at law, the court may not grant equitable relief. *Id.* One of the essential elements of GMAC's cause of action is a showing that it has suffered or will suffer irreparable harm for which there is no adequate remedy at law. *Parkem Indus. Services, Inc. v. Garton,* 619 S.W.2d 428 (Tex.Civ.App.— Amarillo 1981, no writ).

An "irreparable injury" is an injury which cannot be compensated or for which compensation cannot be measured by any certain pecuniary standard. *Inman v. Padrezas,* 540 S.W.2d [789] at 797 [ (Tex.Civ.App.1976) ]. The injury must be actual and substantial, or an affirmative prospect thereof, *Knopf v. Standard Fixtures Co.,* 581 S.W.2d 504, 506 (Tex.Civ.App.—Dallas 1979, no writ), and not a mere possibility of harm. *Arkansas Louisiana Gas. Co. v. Fender,* 593 S.W.2d 122, 123 (Tex.Civ.App.—Tyler 1979, no writ).

*Id.* at 430.

Because all facts were stipulated, there is no essential dispute regarding the facts or procedures at trial.

Appellant, GMAC, asserts nine points of error.

As GMAC correctly argues: "[t]his case should be treated exactly as if someone other than GMAC had purchased the Motor Home at the Sheriff's sale and paid $18,-500.00 for the Motor Home." In order to recover the proceeds of the sale in this suit for injunction, regardless of who bought the motor home, GMAC had to prove that it would be irreparably harmed unless it received the proceeds, and that there was no adequate remedy at law to prevent such harm.

In its first and fourth points of error, GMAC alleges:

Point 1. The District Court erred in entering judgment for Defendants on its finding that GMAC was not entitled to the proceeds of the Sheriff sale pursuant to sec. 9.306(b) of the Texas Business and Commerce Code.

Point 4. The District Court erred in entering judgment for the Defendants on its finding that GMAC must prove that it sold the Motor Home pursuant to its lien at a commercially reasonable sale with a resulting deficiency.

The Code provision relied upon by GMAC reads:

Except where this chapter otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

TEX.BUS. & COM.CODE ANN. sec. 9.306(b) (Tex.UCC) (Vernon Supp.1986).

This provision must be read in conjunction with the other applicable provisions of the Texas Business and Commerce Code.

The debtor's rights in collateral may be voluntarily or involuntarily transferred (by way of sale, creation of a security interest, attachment, levy, garnishment

or other judicial process) notwithstanding a provision in the security agreement prohibiting any transfer or making the transfer constitute a default.

TEX.BUS. & COM.CODE ANN. sec. 9.311 (Tex.UCC) (Vernon Supp.1986).

The relevant part of the official comment to sec. 9.311 reads:

2. Some jurisdictions have held that when a mortgagee or conditional seller has "title" to the collateral, creditors may not proceed against the mortgagor's or vendee's interest by levy, attachment or other judicial process. This section changes those rules by providing that in all security interests the debtor's interest in the collateral remains subject to claims of creditors who take appropriate action. It is left to the law of each state to determine the form of "appropriate process."

The "appropriate process" varies widely from state to state, and is often based on pre-U.C.C. remedies. Justice, *Secured Parties and Judgment Creditors-The Courts and Section 9–311 of The Uniform Commercial Code*, 30 THE BUSINESS LAWYER 433 (1975).

For over one hundred years, the Texas Courts have held that mortgaged personal property is liable to execution by a judgment creditor, subject to the mortgagee's lien. *Gillian v. Henderson*, 12 Tex. 47 (1854); *Rankin v. Belvin*, 507 S.W.2d 908, 912 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.). *See Cook v. Gatewood*, 43 Tex. 185 (1875). The buyer purchases only the equity of the debtor in execution; he buys subject to all rights of the lienholder. *Goetz v. Goetz*, 567 S.W.2d 892, 895 (Tex.Civ.App.—Dallas 1978, no writ); *Fisher v. Foote*, 25 Tex. (Supp.) 311 (1860). The secured creditor may, therefore, foreclose upon the collateral now in the hands of a new buyer if the secured loan has been defaulted. *Peurifoy v. Wiebusch*, 132 Tex. 36, 117 S.W.2d 773 (1938); *Marshall v. Marshall*, 42 S.W. 353 (Tex. Civ.App.1897, no writ).

When the collateral is no longer available for foreclosure, the secured party may be entitled to the proceeds of the execution sale. *See Hudson v. Childree*, 156 S.W. 1154 (Tex.Civ.App.—Texarkana 1913, no writ).

Where the collateral is still in existence and subject to the secured creditor's foreclosure rights, a different situation is presented. The secured party is generally not entitled to enjoin an execution sale by a non-secured judgment creditor in the absence of a showing that the potential purchaser will probably waste, remove, destroy or injure the collateral. *Beil v. Lebo*, 74 S.W.2d 187 (Tex.Civ.App.—San Antonio 1934, no writ).

In the case at bar, GMAC was in possession of the motor home after purchasing it at the Sheriff's sale, and it is undisputed that GMAC had not made a sale of the motor home under its security agreement at the time of trial. Therefore, the remedy of foreclosure and sale was available to it under the Texas Business and Commerce Code:

(a) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral ... The proceeds of disposition shall be applied in the order following to

(1) the reasonable expenses of retaking, holding, preparing for sale or lease, selling leasing and the like and, to the extent provided for in the agreement and not prohibited by law, the reasonable attorneys' fees and legal expenses incurred by the secured party;

(2) the satisfaction of indebtedness secured by the security interest under which the disposition is made;

(3) the satisfaction of indebtedness secured by any subordinate security interest in the collateral if written notification of demand therefor is received before distribution of the proceeds is completed. If requested by the secured party, the holder of a subordinate security interest must seasonably furnish reasonable proof of his interest, and unless he does so, the

secured party need not comply with his demand.

(b) If the security interest secures an indebtedness, the secured party must account to the debtor for any surplus, and, unless otherwise agreed, the debtor is liable for any deficiency ...

(c) ... every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable.

TEX.BUS. & COM.CODE ANN. sec. 9.504 (Tex.UCC) (Vernon Supp.1986).

■ Thus, as GMAC was apparently still in possession of the collateral, it had the right to sell the collateral, at a commercially reasonable sale, and to seek a judgment against Bennett for any deficiency. If a third party had purchased the motor home at the execution sale, GMAC could have foreclosed its interest and sold the motor home pursuant to sec. 9.504. If indeed, Bennett had no additional non-exempt property from which to satisfy a judgment, various remedies were available to GMAC, *ancillary* to the main suit for deficiency. We, therefore conclude that GMAC failed to show that it had no adequate remedy at law. Appellant's first and fourth points of error are overruled.

In its sixth point of error, GMAC urges that the court erred in holding that the fair market value of the motor home exceeded Bennett's debt to GMAC.

We note that GMAC does not challenge the court's 9th and 10th findings of fact and 1st and 2nd conclusions of law, to-wit:

## FINDINGS OF FACT

9. At the Sheriff's Sale held on April 30, 1984, there were a number of bids made on the vehicle. The next to the last bid was Eighteen Thousand Dollars ($18,-000.00) and GMAC made the final and highest bid of Eighteen Thousand Five Hundred Dollars ($18,500.00).

10. GMAC paid Defendant Byrd the sum of $18,500.00 and purchased the rights of Bennett in the Motor Home subject to its own lien, pursuant to the Sheriff's Sale.

## CONCLUSIONS OF LAW

1. The Sheriff's Sale of Bennett's interest in the Motor Home was not a foreclosure of GMAC's lien. Rather it was an execution sale under Tri-Continental's Judgment against Bennett, and the Sheriff at the Sale sold Bennett's interest in the Motor Home to GMAC subject to GMAC's lien.

2. When GMAC became the high bidder at the Sheriff's Sale and paid the Sheriff $18,500.00 cash, GMAC purchased all of the rights of Bennett in the Motor Home subject to its own lien.

As a matter of law, GMAC bought only Bennett's "equity of redemption ... the legal title subject to the [secured] debt" in the motor home. *Liquid Carbonic Co. of Texas v. Logan*, 79 S.W.2d 632, 634 (Tex. Civ.App.—Austin 1935, no writ); TEX.CIV. PRAC. & REM.CODE ANN. sec. 34.045 (Vernon Pamp.1986); TEX.R.CIV.P. 643.

As there were several bidders at the sale besides GMAC, the last of whom bid $18,-000.00, this is some evidence that the fair market value of Bennett's interest alone was worth at least $18,000.00. In order to obtain full title to the motor home, the third-party bidder would have had to pay the debt to GMAC of $19,349.81. Therefore, there is some evidence that the motor home was worth $37,349.81.

Furthermore, the evidence shows that the purchase price of the motor home was $37,454.00. Thus, the only evidence before the court shows that the fair market value of the motor home was in excess of the debt owed to GMAC.

GMAC was not merely seeking a judgment for debt. GMAC was asking the court to rule, in effect, that a deficiency would arise upon sale of the motor home, and that, because Bennett had no other non-exempt assets, irreparable harm would come to GMAC if it was not given the proceeds of the execution sale.

In a suit for deficiency, this Court has held:

> Where there is no proof of a commercially reasonable disposition of the collateral and crediting the debtor with the proceeds, a presumption arises that the proceeds equal the deficiency. *O'Neil v. Mack Trucks, Inc.*, 533 S.W.2d 832 (Tex. Civ.App.—El Paso 1974), rev'd on other grounds at 551 S.W.2d 32 (Tex.1977).

*Tackett v. Mid-Continent Refrigerator Co.*, 579 S.W.2d 545, 549 (Tex.Civ.App.— Fort Worth 1979, writ ref'd n.r.e.).

In *Haden Employees' Ass'n. v. Lovett*, 122 S.W.2d 230, 232 (Tex.Civ.App.—Galveston 1938, writ ref'd), the Court held that:

> It is elementary that in order to justify the granting of an injunction some damage or injury must be shown. In the case of *General Tire & Rubber Co. v. Texas Pacific Coal & Oil Co.*, Tex.Civ. App., 102 S.W.2d 1086, it is held that a proceeding for injunction, being purely equitable, may be maintained only by one who shows clear right and certain injury that will reasonably flow from such rights. *Cain v. Trueheart*, Tex.Civ. App., 12 S.W.2d 239. In the case of *San Antonio Public Service Co. v. Long*, Tex.Civ.App., 72 S.W.2d 696, it is held that an injunction will not lie to prevent an alleged threatened act, the commission of which is speculative and the injury from which is purely conjectural.

*Id.* at 232.

"In order for a party to be entitled to injunction, right sought to be protected must be existing one and must be legally cognizable and justiciable right or interest." *International Ass'n. of Firefighters v. Firemen's and Policemen's Civil Serv.*

*Comm'n.*, 554 S.W.2d 814 (Tex.Civ.App.— Tyler 1977, no writ).

▇ Because GMAC failed to prove that it had made a commercially reasonable sale of the motor home, with a resulting deficiency, and, furthermore failed to prove the debtor's insolvency, we hold that GMAC did not discharge its burden of proof that it would sustain irreparable harm. We therefore agree with the trial court's sixth conclusion of law, which reads, in pertinent part:

> GMAC cannot recover the proceeds of the Sheriff's Sale (which Sale was subject to GMAC's own lien) without proof (and there was none) that GMAC: (1) sold the Motor Home pursuant to its lien at a commercially reasonable sale, and (2) a deficiency arose after GMAC credited Bennett's account with the proceeds thereof.

As GMAC wholly failed to prove any of the material elements for this injunction, the trial court was compelled to render the instant judgment. The Sheriff was the agent for Tri-Continental, the judgment creditor in the sale. *Yarborough v. Wood*, 42 Tex. 91 (1875). He was furthermore, the agent of the judgment debtor, Bennett, for any amount over that necessary to satisfy Tri-Continental's judgment and costs, and was obligated to pay the excess proceeds to him. *Turner v. Gibson*, 152 S.W. 839 (Tex.Civ.App.—Galveston 1911, no writ); *Cook v. Gatewood*, 43 Tex. at 185. Appellant's sixth point of error is overruled. We have reviewed appellant's remaining points of error and find that they are without merit. Appellant's second, third, fifth, seventh, eighth and ninth points of error are overruled without discussion.[1]

---

1. GMAC's remaining points of error are as follows:

   Point 2. The District Court erred in entering judgment for the Defendants on its finding that GMAC, in purchasing the Motor Home established the fair market value of the Motor Home to be in excess of the indebtedness owed and extinguished the debt leaving no deficiency.

   Point 3. The District Court erred in entering judgment for Defendants on its finding that

   pursuant to Rule 643 of the Texas Rules of Civil Procedure and Section 9.311 of the Texas Business and Commerce Code, GMAC is not entitled to any part of the proceeds.

   Point 5. The District Court erred in entering judgment for Defendants based on its finding of fact that GMAC did not attempt to repossess, foreclose its lien or sell the Motor Home pursuant to its lien at a commercially reasonable sale as there is no evidence to support such finding.

The judgment of the trial court is affirmed.

Point 7. The District Court erred in entering judgment for the Defendants on its finding that to allow GMAC to retain the Motor Home and in addition to recover the proceeds would permit a double recovery and unjust enrichment to GMAC.

Point 8. The District Court erred in entering judgment for the Defendants based on its finding that GMAC was not entitled to the proceeds because (a) the proceeds were not received by the debtor; (b) GMAC authorized the sale; (c) GMAC exercised its option and waived its rights to the proceeds and (d) GMAC exercised its option and is estopped to claim the proceeds.

Point 9. The District Court erred in entering judgment for the Defendants based on its finding that to allow GMAC to retain the collateral and to recover the proceeds would be contrary to public policy.